**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Norris W. JACKSON, Defendant–
Appellant.**

**No. 95–3631.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1996.

Decided Dec. 26, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 7, 1997.

Kit R. Morrissey (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff-Appellee.

Gerald A. Sims (argued), St. Louis, MO, for Defendant-Appellant.

Before BAUER, FLAUM, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Norris W. Jackson ("Jackson") was convicted by a jury of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846, possession of cocaine base in violation of 21 U.S.C. § 841(a)(1), use or carriage of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), and unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The district court found Jackson to be a career offender and sentenced him to a total of 420 months' imprisonment. On appeal, Jackson presents numerous challenges to his convictions and sentence. We conclude that only Jackson's challenge relating to the § 924(c) conviction has merit. We reverse the § 924(c) conviction, affirm the remaining three convictions, and remand the case for further proceedings consistent with this opinion.

## I. Background

Jackson's convictions are the result of a drug conspiracy investigation which began on September 22, 1994. During the course of the investigation, a confidential informant purchased crack cocaine on two separate occasions from a residence located in the Washington Park community, at 1523 N. 47th Street, East St. Louis, Illinois. Based in part upon information obtained from the informant, Special Agent Charles Brueggemann obtained a search warrant, which was executed on October 14, 1994 at approximately 2:30 in the afternoon. Among the items seized during the course of the search were $297 from Jackson's pants pocket, including thirteen $20 bills, 8.1 grams of crack cocaine from a spare bedroom, a digital scale with cocaine residue, and mail addressed to Jackson, his friends and family. Police also

seized a loaded nine-millimeter handgun, which was located between the arm rest and seat cushion of a couch in the living room, and a shotgun, which was located against a dresser in Jackson's bedroom. Present in the house during the search were Jackson, Jessie Ratcliff ("Ratcliff"), and one other person.

After the search, Jackson gave a voluntary statement to Agent Jay A. Keeven concerning his criminal activities. Jackson reported that, about every day for two-and-a-half months, Chris Riggins ("Riggins") had sold crack cocaine out of Jackson's house. If Riggins were not present, Jackson would sell the crack cocaine pursuant to Riggins' directions. Ratcliff also sold Riggins' crack cocaine from Jackson's house, and Ernest Riggins (Chris Riggins' brother) sold Riggins' crack cocaine from his own house.

Jackson stated that on the day of the search, Riggins bought two-and-a-half ounces of crack cocaine for $875 per ounce from a man named Junior. Riggins then brought the crack cocaine to Jackson's house and weighed it on the digital scale. Riggins broke some of the crack cocaine into "sixteenths" on the living room coffee table and hid some of it in the back bedroom of Jackson's house. Jackson further explained that one of Riggins' brothers is a Washington Park police officer and the police generally "let [Riggins] slide."

Jackson's statement to the police also contained information concerning the two firearms seized during the search. According to Jackson, Riggins traded crack cocaine for the handgun sometime prior to the day of the search and then left the handgun at Jackson's house because he did not want to ride around town with a weapon on his person. Jackson stated that he had personally handled the handgun on his porch and had seen Riggins carry the handgun prior to the day of the search. As for the shotgun, Riggins obtained it in exchange for crack cocaine on the day of the search. After the exchange, Riggins gave the shotgun to his brother, Ernest, who put the shotgun in Jackson's car. Jackson drove to his house, took the

shotgun inside, showed it to Ratcliff, and instructed Ratcliff to put it in the bedroom.

Jackson was named in a six-count indictment and was tried by a jury on June 5–7, 1995. He was convicted of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (Count 1), possession of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 4), use or carriage of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 5), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count 6).[1] Jackson moved for a downward departure under U.S.S.G. § 5K2.0 on the ground that the Sentencing Commission had not adequately considered mitigating circumstances in formulating the sentencing scheme for crack cocaine offenses. The district court denied the motion.

Jackson was sentenced on October 25, 1995. Jackson was found to be a career offender and was sentenced to 360 months' imprisonment on Count 1, 240 months' imprisonment on Count 4, and 120 months' imprisonment on Count 6, all the sentences to run concurrently. In addition, he was sentenced to 60 months' imprisonment on Count 5, the sentence to run consecutively to the sentences imposed on the other counts.

Jackson presents essentially five issues on appeal. First, Jackson challenges the sufficiency of the evidence for his conviction on Count 1. Second, he challenges the sufficiency of the evidence and the jury instructions for his conviction on Count 5. Third, Jackson challenges his classification as a career offender. Fourth, he claims that the district court improperly rejected his motion for a downward departure. Finally, he claims that his trial counsel was ineffective for failing to file a motion to quash the search warrant, the execution of which led to the seizure of all of the evidence used against him at trial.

## II. Sufficiency of the Evidence on Count 1

Jackson asserts that the evidence presented at trial was insufficient to establish his

---

1. Counts 2 and 3 of the indictment, which charged Jackson with distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), were dismissed prior to trial.

guilt on the Count 1 conspiracy charge. At trial, the only evidence of a conspiracy came from the voluntary statement Jackson made to the police on October 14, 1994. Jackson contends that the Government was required to corroborate the statement by presenting independent evidence of each element of the conspiracy charge. The only evidence adduced at trial to establish the "agreement" necessary for a conspiracy came from Jackson's statement. The Government's evidence did not independently establish agreement, and Jackson, therefore, concludes that there was insufficient evidence to sustain his conviction.[2]

■ We review the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the Government and will affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Blanding*, 53 F.3d 773, 777–78 (7th Cir.1995) (citation omitted). Jackson's argument to this Court evidences a misunderstanding of what the law requires the Government to adduce at trial in order to sustain a conviction for conspiracy. Specifically, he overstates the extent of independent evidence necessary to corroborate an admission.

■ In a criminal trial, the Government must, of course, prove all elements of the charged offense beyond a reasonable doubt. Proof may be in the form of an admission by the accused, but the admission must be corroborated by other reliable evidence. *United States v. Grizales*, 859 F.2d 442, 445 (7th Cir.1988) (citing *Opper v. United States*, 348 U.S. 84, 91, 75 S.Ct. 158, 163–64, 99 L.Ed. 101 (1954)). In this circuit, when an appellant challenges the sufficiency of the evidence, alleging that the conviction was based solely on his own statements, we will uphold the conviction if there is "substantial independent evidence which would tend to establish the *trustworthiness* of the statement."

*Grizales*, 859 F.2d at 445 (quoting *Opper*, 348 U.S. at 93, 75 S.Ct. at 164) (emphasis added). Contrary to Jackson's interpretation of the law, establishing such trustworthiness does not require *independent* proof of *each element* of the offense charged. *United States v. Bukowski*, 435 F.2d 1094, 1106 (7th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971) (emphasis added); *see also United States v. Trombley*, 733 F.2d 35, 38 (6th Cir.1984) ("If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible, and some elements of the offense may be proven entirely on the basis of a corroborated confession.") (citation omitted). The Supreme Court has explained that "one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954).

■ In the instant case, it is undisputed that Jackson's October 14, 1994 statement to the police was an admission of his involvement in a drug trafficking conspiracy. "[T]he government need not establish a formal agreement to conspire. The jury properly may find an agreement to conspire based upon 'circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct.'" *United States v. Larkins*, 83 F.3d 162, 166 (7th Cir.1996) (citations omitted). To justify a conspiracy conviction based on Jackson's statement, the Government was required to present substantial evidence at trial to fortify the truth of Jackson's October 14, 1994 statement. We find that the Government satisfied this burden.

Jackson's statement was corroborated in the following respects. Jackson's description of his prior criminal history was independently corroborated by the defense at trial. Jackson's description of corruption in the

---

**2.** In his briefs to this Court, Jackson maintains that the Government fell short of its burden of corroboration in that (1) no witnesses testified that Jackson had any relationship with Riggins or other drug traffickers, (2) no surveillance by the police documented with whom Jackson came

into contact, (3) no independent evidence established that Jackson's drug involvement occurred over a period of time, and (4) no notes or records indicated that anyone was involved with Jackson in drug trafficking.

Washington Park Police Department was independently corroborated by the testimony of St. Clair County Deputy Sheriff David Clark and by statements from the defense at trial. Jackson's statement that Riggins left the gun at Jackson's house for safekeeping was independently corroborated by the recovery of a fully loaded nine-millimeter handgun during the execution of the search warrant. Jackson's statement that Riggins, with Jackson's assistance, traded a shotgun for crack cocaine and that Jackson directed another person to put it in his bedroom was independently corroborated by the recovery of a shotgun during the search.

Other physical evidence seized during the search corroborated Jackson's statements that he was a distributor of crack cocaine for Riggins and that Riggins weighed crack cocaine at his house and left crack cocaine in his spare bedroom on the day of the search. For example, police seized $297 from Jackson's pants pocket, including thirteen $20 bills. Police also seized 8.1 grams of crack cocaine in a spare bedroom. Crack cocaine residue was found on a digital scale located on top of the refrigerator in the kitchen. An expert witness testified at trial that possession of a digital scale was consistent with distributing drugs, as opposed to merely using drugs. The expert witness also testified that crack cocaine is sold at the street level in 0.1 gram quantities for $20 and that 8.1 grams of crack cocaine could be broken down into seventy-five to eighty $20 "rocks."

Our review of the record indicates that Jackson's statement was indeed corroborated by substantial independent evidence. That evidence, along with the statement, was sufficient for the jury to find, beyond a reasonable doubt, that Jackson was involved in a drug trafficking conspiracy. Accordingly, we reject Jackson's sufficiency of the evidence claim and affirm Jackson's conviction for the Count 1 conspiracy charge.

### III. Challenges to the 18 U.S.C. § 924(c) Conviction

■ Jackson next challenges his conviction for using or carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Section 924(c)(1) reads:

"Whoever, during and in relation to any crime of violence or drug trafficking crime ...; uses or carries a firearm, shall, in addition to the punishment provided for such a crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." During Jackson's trial, the district court instructed the jury as follows:

A firearm is used or carried during and in relation to a drug-trafficking crime if the circumstances of the case show that the firearm facilitated or had a role in the crime by providing a person with the security and confidence to undertake a transaction or series of transactions involving illegal drugs. "Using" a firearm includes the possession of a firearm which in any manner facilitates the crime.

At the time of Jackson's trial, this instruction was an accurate statement of the law of this circuit, and the word "use" in § 924(c) was defined broadly enough to encompass the firearm activity with which Jackson was charged. *See United States v. Ocampo*, 890 F.2d 1363, 1371 (7th Cir.1989). However, between the time of Jackson's conviction and his appeal to this Court, the United States Supreme Court decided *Bailey v. United States*, — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which significantly narrowed the scope of firearm activity that qualifies as "use" under § 924(c). In Bailey, the Supreme Court held that § 924(c) requires evidence sufficient to show an *active employment* of the firearm by the defendant during and in relation to the predicate crime. *Id.* at ——, 116 S.Ct. at 505. For example, brandishing, displaying, bartering, striking with, and firing or attempting to fire a firearm, or making reference to a firearm in a defendant's possession all constitute "use" under § 924(c). *Id.* at ——, 116 S.Ct. at 508. In contrast, the mere placement of a firearm for protection at or near the site of a drug crime or its proceeds or paraphernalia, or the nearby concealment of a gun to be at the ready for an imminent confrontation are no longer within the scope of § 924(c)'s definition of "use." *Id.*

■ Jackson casts his *Bailey* appeal to this Court as both a challenge to the sufficiency of the evidence and a challenge to the

jury instruction on "use" given at trial. Clearly, *Bailey* has rendered the challenged jury instruction an incorrect statement of law. Our approach to dealing with cases such as this one has evolved through a series of recent post-*Bailey* decisions:

> In cases ... where the jury instruction on "use" was clearly flawed, whether a § 924(c)(1) conviction will be affirmed·outright, reversed outright, or reversed and remanded depends upon the nature of the evidence presented at trial. The essential framework is as follows: 1) if all the firearms evidence presented qualifies as either active-employment "use" or "carry," we will affirm the conviction despite the bad instruction, *see, e.g., United States v. Baker*, 78 F.3d 1241, 1245–47 (7th Cir.1996); 2) if none of the evidence presented qualifies as either active-employment "use" or "carry," we will reverse the conviction outright, *see, e.g., United States v. Monroe*, 73 F.3d 129, 132–33 (7th Cir.1995); and 3) if some of the evidence presented could qualify as either active-employment "use" or "carry," but other firearms evidence presented exemplifies only possession or some other type of now-defunct, inactive "use," we will reverse the conviction and remand for a new trial, since we cannot be sure whether the jury convicted on the proper basis or the improper basis, *see, e.g., United States v. Thomas*, 86 F.3d 647, 650–51 (7th Cir. 1996).

*United States v. Robinson*, 96 F.3d 246, 250 (7th Cir.1996). This case falls into the second category—none of the evidence adduced at trial shows that Jackson "used" or "carried" a firearm in relation to a drug trafficking crime. At trial, the Government presented the theory that the presence of the guns emboldened Jackson in his crack cocaine distribution business. To this end, the prosecutor stated: "[T]here has been no evidence in this case that this defendant used the weapon, in other words, brandished it, pointed it at anyone, shot it off. The evidence is simply that the weapons were present in the house." Under pre-*Bailey* law, "emboldening" would have qualified as "use" under § 924(c). Today, evidence of the firearms' mere presence

in Jackson's house is insufficient to sustain a § 924(c) conviction. Moreover, there is no evidence that Jackson "carried" the firearms in relation to a drug trafficking crime. The handgun was found between the arm rest and seat cushion of the couch in the living room, and the shotgun was found against a dresser in Jackson's bedroom. Thus, it is appropriate for us to reverse the conviction on Count 5.

██ Nonetheless, *Bailey* does not render the presence of the firearms in Jackson's house irrelevant. The Government requests that we remand the case for resentencing so that it may seek an enhancement of the base offense level on Count 1. While this circuit has not previously evaluated the propriety of such a request, other circuits have determined that where an appellant's conviction under § 924(c) is reversed in light of *Bailey*, it is appropriate to remand for resentencing on the affirmed convictions. *See, e.g., United States v. Lopez*, 100 F.3d.98, 101–03 (9th Cir. 1996); *United States v. Thomas*, 93 F.3d 479, 488 (8th Cir.1996); *United States v. Clements*, 86 F.3d 599, 600–01 (6th Cir.1996); *United States v. Lang*, 81 F.3d 955, 963–64 (10th Cir.1996); *United States v. Giraldo*, 80 F.3d 667, 677 (2d Cir.1996); *United States v. Fennell*, 77 F.3d 510, 510–11 (D.C.Cir.1996). We follow in the stead of our sister circuits.

The Sentencing Guidelines provide for an increase in the base offense level for certain drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed" during the offense. U.S.S.G. § 2D1.1(b)(1). The district court was precluded from enhancing Jackson's sentence pursuant to § 2D1.1(b)(1) because the Sentencing Guidelines prohibit so-called "double counting"— applying an enhancement in conjunction with a § 924(c) conviction. See U.S.S.G. § 2K2.4 background (explaining that when a defendant is sentenced to the five-year consecutive minimum sentence under § 924(c), a specific offense characteristic for possession of a firearm is not to be applied to the guideline for the underlying offense). However, reversing Jackson's § 924(c) conviction in light of *Bailey* removes this impediment.[3]

---

**3.** In limiting the scope of § 924(c), the Supreme Court acknowledged in *Bailey* that "the Govern-

■ In a case on a direct appeal from multiple-count criminal convictions, an appellate court has the supervisory power to vacate interdependent sentences even if only one of the sentences is reversed on appeal. 28 U.S.C. § 2106; *Clements,* 86 F.3d at 600–01 (citations omitted). Jackson's sentences for his multiple convictions were interdependent. The § 924(c) conviction prohibited the district court from exercising its discretion to increase Jackson's offense level on the conspiracy conviction pursuant to § 2D1.1(b)(1) because of the rule against double counting. *See Clements,* 86 F.3d at 601. Therefore, it is within our power to vacate Jackson's sentence and remand to the district court for resentencing. We explicitly offer no opinion on whether an enhancement is appropriate under the facts of this case, but leave that determination to the discretion of the district court.

## IV. Challenges to Sentencing

### A. Classification as a Career Offender

The district court classified Jackson as a career offender, which had the effect of enhancing his sentence, and Jackson now challenges that classification. Under the Sentencing Guidelines, a "defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Jackson concedes that elements (1) and (2) are satisfied and that he has one prior felony conviction for a crime of violence under element (3). However, he disputes the district court's finding that he also has a prior felony conviction for a controlled substance offense.

Under the Sentencing Guidelines, a "controlled substance offense" is "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or

dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2. Jackson contends that the state court documents regarding a 1990 drug conviction in St. Clair County, Illinois were ambiguous as to whether the conviction was for possession with intent to deliver a controlled substance, which is a controlled substance offense under § 4B1.2, or for a simple possession offense, which is outside the scope of § 4B1.2 and thus would not satisfy the third element of § 4B1.1. The issue on appeal then is whether the district court properly determined that Jackson's 1990 conviction was for a controlled substance offense.

■ We review factual determinations underlying the application of the Sentencing Guidelines for clear error. *United States v. Yusuff,* 96 F.3d 982, 989 (7th Cir.1996) (citation omitted). "A fact-finder's choice between two permissible [views of the evidence] cannot be clearly erroneous." *Id.* (citations omitted).

■ The criminal information and the judgment order from Jackson's 1990 conviction both entitle the charge "Unlawful Possession of a Controlled Substance." To find that this title renders the state court documents ambiguous, as Jackson urges, we would have to adopt a form-over-substance approach. We decline to do so. Our examination of the 1990 criminal information, judgment order, and transcript of Jackson's plea and sentencing hearing leads us to conclude that Jackson was indeed convicted of a controlled substance offense, specifically, unlawful possession of a controlled substance with intent to deliver.

Despite the abbreviated title of the offense, the criminal information states that "the defendant knowingly possessed *with intent to deliver* to s/a banks 1 gram or more but less than 15 grams of a substance containing cocaine...." (emphasis added). The

ment often has other means available to charge offenders who mix guns and drugs.... Sentencing Guidelines § 2D1.1(b)(1) provides an enhancement for a person convicted of certain

drug-trafficking offenses if a firearm was possessed during the offense." *Bailey,* —— U.S. at ——, 116 S.Ct. at 509.

criminal information further indicates that the offense was a Class 1 felony in violation of "Section 1401(c)(2) Chapter 56 1/2 of the Illinois Revised Statutes" (current version at 720 ILL.COMP.STAT. 570/401 (West 1992)), which provides in relevant part: "[I]t is unlawful for any person knowingly to manufacture or deliver, or possess *with intent to manufacture or deliver*, a controlled or counterfeit substance...." (emphasis added). This section of the Illinois code does not define or include simple possession offenses. Moreover, the judgment order indicates that Jackson was sentenced to four years' imprisonment, which is within the range of possible penalties for a Class 1 felony (four to fifteen years' imprisonment). A conviction for simple possession in Illinois carries a maximum prison term of only three years.

Finally, the colloquy that took place at Jackson's 1990 plea and sentencing hearing further supports the district court's conclusion that Jackson was convicted of unlawful possession of a controlled substance with intent to deliver:

> STATE'S ATTORNEY: The negotiations are that the defendant is going to enter a plea of guilty to Count II, which is the *Class I Felony, Unlawful Possession of a Controlled Substance with Intent to Deliver*. In exchange for that, the State would recommend and the defendant agrees to be sentenced to four years in the Department of Corrections. (emphasis added).

> \* \* \*

> THE COURT: You've been charged in Count II of this Criminal Information with the offense of Unlawful Possession of Controlled Substance. Specifically, that you knowingly possessed *with the intent to deliver* to Special Agent Banks one gram or more but less than fifteen grams of a substance containing cocaine. (emphasis added).

> \* \* \*

> THE COURT: The drug charge here, the Unlawful Possession of Controlled Substance, is a *Class I Felony. It's punisha-*

*ble by four to fifteen years* in Department of Corrections. (emphasis added).

These statements make clear that Jackson pleaded guilty to unlawful possession of a controlled substance with intent to deliver, which is a Class I felony, punishable by four to fifteen years' imprisonment. The shorthand title "Unlawful Possession of a Controlled Substance" that appears in the court documents does not render the substance of the offense ambiguous. Jackson's 1990 conviction qualifies as a controlled substance offense under the Sentencing Guidelines, and therefore, the district court's classification of Jackson as a career offender was not clearly erroneous.

### B. Downward Departure

Jackson next contends that the district court erroneously believed it was without authority to rule on the merits of his motion for a downward departure. A sentencing court "may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. § 5K2.0 commentary.

Jackson argued to the district court that he was entitled to a downward departure because the Sentencing Commission failed to adequately consider mitigating circumstances in formulating the 100-to-1 ratio that is used in powder cocaine and crack cocaine sentencing schemes.[4] To support his argument, Jackson cited certain findings of the Sentencing Commission contained in a 1995 report to Congress which suggest that the 100-to-1

---

4. The amount of powder cocaine involved in an offense that will trigger a mandatory minimum sentence under the Sentencing Guidelines is 100 times the amount of crack cocaine that will trigger the same sentence.

ratio creates unfairness in sentencing.[5] *See* Special Report to Congress: Cocaine and Federal Sentencing Policy (1995). Jackson also pointed to the fact that after the current guidelines were enacted, the Sentencing Commission proposed an amendment to the guidelines which would have eliminated the disparity between sentences for powder cocaine and crack cocaine. *See* Amendments to the Sentencing Guidelines, 60 Fed.Reg. 25074 (May 10, 1995). Congress, however, rejected the proposed amendment, and the sentencing scheme remained intact. *See* Federal Sentencing Guidelines, Amendment, Disapproval, Pub.L. No. 104–38, 109 Stat. 334 (1995).

Bearing in mind this recent history, the district court denied Jackson's motion for a downward departure. At Jackson's sentencing hearing, the district court stated:

> The Court would be less than candid if it did not acknowledge the status of the law relative [sic] the guidelines and the sentencing for cocaine versus cocaine base. The Court is well aware of the recommendations and the special report to Congress made in 1995 on cocaine and the federal sentencing policy. And while the Court very honestly believes that the recommendations of the special report to Congress on cocaine and federal sentencing policy filed in 1995 should be followed, I can only report to you that the Congress of the United States has determined otherwise. In respect [sic] the separation of powers that exist between the judicial branch and the legislative branch, I'm of the opinion that at this point in time there's unfortunately nothing the Court can do about it. That doesn't make it right. It only respects what the legislative intent is.

In framing his appeal to this Court, Jackson hones in on these remarks, interpreting them to mean that the district court believed that it had no authority to entertain Jackson's motion for a downward departure and that the district court's belief was based upon the fact that Congress had rejected the proposed amendment. Jackson contends that this was

error because 18 U.S.C. § 3553(b) limits the scope of what a court may examine in determining whether a circumstance was adequately taken into consideration in formulating the guidelines. Section 3553(b) permits a court to consider "only the sentencing guidelines, policy statements, and the official commentary of the Sentencing Commission." Jackson concludes that Congress' rejection of the Sentencing Commission's proposed amendment was beyond the scope of permissible considerations, and therefore, that the district court incorrectly ruled it was prohibited from departing and could have exercised its discretion in the matter.

■ Our authority to review a district court's denial of a motion for a downward departure depends upon the court's reason for the denial. We lack jurisdiction to review a court's discretionary refusal to depart downward. *United States v. Larkins*, 83 F.3d 162, 168 (7th Cir.1996). If, however, the district court believed it lacked the authority to depart even though mitigating circumstances existed, as Jackson urges in this case, this belief would constitute a legal conclusion and would permit appellate review. *Id.*

■ The district court's reason for denying Jackson's motion is not as complex as Jackson would have us believe. The general rule is that a defendant is to be sentenced under the guidelines in effect at the time of sentencing. *United States v. Booker*, 73 F.3d 706, 710 (7th Cir.1996) (per curiam). A subsequent amendment to the guidelines is an appropriate guide for a departure in sentencing a defendant under an earlier version of the guidelines. *Id.* In Jackson's case, however, the proposed amendment never became law. Hence, the district court was not considering Congress' rejection of the proposed amendment, which would have been prohibited under § 3553(b). The district court was considering the guidelines that remained in effect as a result of Congress' rejection of the proposed amendment. The district court's

---

**5.** Specifically, Jackson argued that the ratio: (1) disproportionately impacts African–Americans; (2) creates higher penalties for street dealers than for their suppliers; (3) effects a double punishment on crack defendants in light of amendments to the guidelines; and (4) creates extraordinary disparities given the street values of the two forms of cocaine. He further argued that the ratio is not justified by the physiological effects of the two different forms of cocaine.

articulated belief that the proposed amendment should be adopted and followed is of no consequence. A district court's "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." U.S.S.G. § 5K2.0 commentary.

Furthermore, Jackson did not show anything atypical about himself or his crime to warrant a departure under § 5K2.0 of the Sentencing Guidelines. The only evidence Jackson presented to support his motion for a downward departure was the Special Report pertaining to the disparate impact of crack cocaine penalties and the subsequent proposed amendment. Every circuit court, including this one, to address the issue has concluded that a district court cannot contemplate a downward departure under § 5K2.0 based on the disparity between the penalties for crack cocaine and powder cocaine offenses. *See Booker*, 73 F.3d at 710 (collecting cases). The district court did not err by refusing to grant Jackson's downward departure motion and by sentencing him according to the Sentencing Guidelines.

## V. Ineffective Assistance of Trial Counsel Claim

Jackson's final contention on appeal is that his trial counsel was ineffective for failing to challenge the search warrant, the execution of which led to Jackson's incriminating statements to the police and to the seizure of all the physical evidence used against Jackson at trial. Specifically, Jackson points to discrepancies between two physical descriptions of the person who allegedly sold the informant crack cocaine that are contained in the informant's statements to the police. Jackson claims that the discrepancies give rise to an inference of falsity in application for the warrant under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and that his trial counsel's failure to use these contradictory facts to file a motion to quash the search warrant amounted to ineffective assistance of counsel.

■ In reviewing a Sixth Amendment ineffective assistance of counsel claim, we pre-

sume counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984); *United States v. Moutry*, 46 F.3d 598, 604 (7th Cir.1995). To overcome this presumption, Jackson must demonstrate (1) that his trial attorney's representation fell below an objective standard of reasonableness, and (2) that he was prejudiced by his trial attorney's deficient representation—in other words, that but for his trial attorney's inadequate performance the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068; *United States v. Herrera–Rivera*, 25 F.3d 491, 495 (7th Cir.1994).

■ We first address the prejudice prong of *Strickland*. In order to demonstrate actual prejudice where the principal allegation of ineffectiveness is defense counsel's failure to competently litigate a Fourth Amendment claim, the defendant must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986); *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995). Jackson argues that filing a *Franks* motion was critical because he would have "gone free" had the evidence garnered during the execution of the search warrant been suppressed. It is undisputed that a successful *Franks* motion in this case would have led to a different trial result. (Indeed, the case never would have gone to trial had there been no physical evidence and no confession by Jackson.) Jackson's argument presumes that effective trial counsel could have suppressed the evidence resulting from the search. That is *not* true.

[20, 21] At this point, we briefly review the dictates of *Franks v. Delaware*. Affidavits supporting search warrants are presumed valid. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. A defendant faces a formida-

ble task in attempting to overcome this presumption:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56. In other words, to support a *Franks* motion, Jackson's trial counsel would have been required to make an offer of proof (1) that the Complaint for Search Warrant ("Complaint") contained a false statement, (2) that Agent Brueggemann's state of mind in making the false statement was at least reckless, and (3) that the false statement was material, i.e., necessary for a finding of probable cause.

■ Jackson's *Franks* argument revolves around the following facts. Two controlled drug purchases by the same informant established probable cause for the search warrant. After the first purchase, on September 22, 1994, the informant prepared and signed a statement in which he described the seller, whom he called "Lamont," as 6 feet 0 inches and "fat." In the signed statement prepared after the second purchase, on October 13, 1994, the informant described the seller as 5 feet 3 inches and 150 lbs. The supporting investigative report identifies the seller as "Lamont." Agent Brueggemann was present as a witness to both statements and prepared the supporting investigative report for the second statement. He also prepared and swore to the Complaint. Regarding the first buy, the Complaint states: "Upon returning to the vehicle, the C/S handed the undercover officer the suspected crack/cocaine that was purchased from an individual known to the C/S as LAMONT." As to the second buy, the Complaint reads: "Upon returning to the vehicle, the C/S handed the undercover officer the suspected crack/cocaine that was again purchased from an individual who the C/S stated was the same person as the purchase on 09/22/94." Agent Brueggemann did not include a physical description of the alleged seller in the Complaint. Jackson contends that because the informant's physical descriptions of the alleged seller were so disparate, the informant must have purchased crack cocaine from two different sellers, and, therefore, the statement in the Complaint identifying the seller as the same person is false.

■ We need not determine whether the challenged statement is, in fact, false. Nor is it necessary to consider Agent Brueggemann's state of mind in preparing the Complaint. Even assuming *arguendo* that Jackson could show that a false statement was deliberately or recklessly included in the Complaint, probable cause to search the residence at 1523 N. 47th Street, East St. Louis, Illinois would still have existed if the misstated information were set aside. Jackson places too much weight on the identity of the seller in this case. As Jackson concedes in his brief to this Court, search warrants are for places and not for people. Probable cause exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* — U.S. ——, ——, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996) (citations omitted); *United States v. Navarro,* 90 F.3d 1245, 1251 (7th Cir.1996). The Complaint establishes probable cause in that it shows that drugs had been or were being sold or possessed at 1523 N. 47th Street, East St. Louis, Illinois. The identity of the seller does not undermine, change or mitigate the finding of probable cause. It does not negate the fact that an informant purchased crack cocaine on two separate occasions from someone at 1523 N. 47th Street, East St. Louis, Illinois. This is the information included in the Complaint that is proba-

tive. In sum, Jackson cannot show that had his trial counsel requested it, he would have been entitled to a *Franks* hearing. Thus, under the second prong of the *Strickland* test, Jackson was not prejudiced by his trial counsel's failure to make a *Franks* motion.

Because the defendant has the burden of satisfying both prongs of the *Strickland* test, we need not decide if counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70; *Shepard v. Lane*, 818 F.2d 615, 619 (7th Cir.), cert. denied, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). Nevertheless, we will make a few brief comments. In evaluating whether an attorney's representation was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). In an affidavit, Jackson's trial counsel stated his reasons for not pursuing a *Franks* hearing:

> 7. It is my reasoned and professional judgment that we (meaning Mr. Jackson and myself as trial counsel) would not prevail in a hearing based upon the holding of *Franks v. Delaware*. My investigation of the case and based upon my knowledge of the totality of the circumstances, it is my reasoned and professional judgment that no deliberate falsehood or reckless disregard for the truth was employed in obtaining the search warrant in question. This is the reason why a motion to quash the search warrant would be in my opinion unsuccessful.

> 8. In addition, it was Mr. Jackson's desire to show at trial that he did not live in the house where the search warrant was executed and the evidence seized. There was testimony to this effect from the Defendant's mother and then fiancee, and now wife.

> It is my reasoned and professional judgment that in order to attack the search warrant we would have to suggest either by testimony or in pleadings that the defendant had standing i.e., lived at the house in question. This would be contrary to the defense at trial. This is an additional reason why I elected not to attack the search warrant.

Jackson's trial counsel's decision not to challenge the search warrant was based, in part, on his reasoned judgment that Jackson would not prevail in a *Franks* hearing. While trial counsel's declaration that he did not think he could prevail on the motion is not dispositive, our own analysis of whether effective trial counsel could have brought a successful *Franks* motion supports trial counsel's articulated belief. We have stated that "[c]ounsel cannot be expected to request a *Franks* hearing when the evidence presented is insufficient to warrant such a hearing." *United States v. McDonald*, 723 F.2d 1288, 1297 (7th Cir.1983), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *see also United States v. Grizales*, 859 F.2d 442, 447 (7th Cir.1988) ("Nothing in the case law pertaining to the Sixth Amendment right to effective counsel requires that an attorney exercise all possible procedural and substantive options in pursuit of a futile motion to suppress evidence."). Jackson's trial counsel also explained that he chose not to pursue a *Franks* hearing because his trial strategy was to show that Jackson did not live at the house where the evidence was seized. This Court "will not question counsel's choices among an array of reasonable trial strategies." *Moutry*, 46 F.3d at 605. We find no reason to question the reasonableness of trial counsel's strategy in this case.

## VI. Conclusion

For the foregoing reasons, we AFFIRM Jackson's conviction on Counts 1, 4, and 6. We REVERSE Jackson's conviction on Count 5, the 18 U.S.C. § 924(c) charge, and REMAND the case for reconsideration of the sentence based on the reversal.