In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4105

United States of America,

Plaintiff-Appellee,

v.

Cora Buckowich,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-CR-215--Thomas J. Curran, Judge.

Argued January 23, 2001--Decided March 22, 2001

  Before Posner, Easterbrook, and Ripple, Circuit
Judges.

  Easterbrook, Circuit Judge.  Cora Buckowich raised
money using the lure of spectacular profits. She
promised that an investment of $500,000 placed in
overseas "bank note trading programs" would grow
to $93 million within three months. The offer was
ludicrous; a promise of extravagant returns is a
signal of fraud (and it also should have posed
the question why, if Buckowich had such amazing
opportunities, she would allow the profits to go
to strangers rather than reaping them herself).
Yet Gordon Ralph was taken in; and the oddity
that a well-to-do person would be such a sucker
was compounded by the fact that Ralph had his
lawyer William Wylie represent him in the
transaction. How any competent attorney could
have failed to protect his client from this scam
is a mystery, but Wylie and his partner Grant
Markuson seem to have been more naive than Ralph.
At least Ralph knew that he needed professional
assistance. Wylie and Markuson not only failed to
steer Ralph away from the fraud but also did not
keep tabs on the money. Buckowich used a series
of bank transfers to spirit the funds from
Markuson's lax supervision during a trip to
London for the supposed closing. By the time
prosecutors caught up with her, Buckowich had
spent the proceeds and could not make
restitution. She has been sentenced to 40 months'
imprisonment for wire fraud, 18 U.S.C. sec.1343,

and unlawful financial transactions, 18 U.S.C. sec.1957.

Buckowich's sole argument on appeal is that the district judge erroneously believed that he lacked authority to sentence her below the applicable range under the Sentencing Guidelines, and would have given her the benefit of a downward departure had he recognized the extent of his discretion. This is an implausible line of argument, because the district judge did not act as if constrained to sentence Buckowich to a longer term than the judge believed appropriate. After concluding that the guidelines prescribed a range of 33-41 months' imprisonment, the judge selected a sentence of 40 months, almost the top of the range. A judge who preferred to depart downward, but thought that legal rules blocked such a step, would sentence the defendant at the bottom of the available range. We do not mean that a sentence above the bottom of the range makes it legally impossible for a defendant to argue on appeal that the judge imposed an excessive sentence because he misunderstood the extent of his discretion; perhaps some odd events that we do not foresee would reconcile a top-of-range sentence with a desire to depart downward, if that step were lawful. But a top-of-range sentence surely dispels ambiguity in the district judge's rulings. If there are two possible ways to understand the district court's ruling--either as a discretionary decision not to depart downward, or as a statement of belief that the law precludes downward departure, the former not reviewable on appeal, see United States v. Franz, 886 F.2d 973 (7th Cir. 1989), but the latter reviewable under 18 U.S.C. sec.3742(a)--a top-of-range sentence demonstrates that the judge meant the former. A high-in-range sentence also usually demonstrates that, even if the judge erred in believing that he lacked discretion to depart, this error did not harm the defendant and so does not furnish grounds for reversal.

Inferences drawn from the high-in-range sentence resolve this appeal against Buckowich, for the district court's ruling is ambiguous--doubtless because Buckowich's lawyer presented a garbled oral argument at sentencing. (A different lawyer represents Buckowich on appeal and is not responsible for the events we describe.) After receiving a copy of the presentence report, Buckowich's lawyer filed several documents. One of these, entitled "Objections to Presentence Report", sets out 14 numbered objections to statements and calculations in the report. Objections 7 through 10 contend, in slightly different ways, that the district court should start with the base offense level for fraud under U.S.S.G. sec.2F1.1(a), rather than the base

offense level for money laundering in sec.2S1.2(a). (The guidelines treat a violation of sec.1957 as a form of money laundering, and we do likewise.) The base offense level for fraud is 6, with a 9-level increase for a loss between $350,000 and $500,000, adding up to a total offense level of 15. But the base offense level for money laundering is 17, with 3 more levels under sec.2S1.1(b)(2)(D) for laundering between $350,000 and $600,000, yielding a total offense level of 20. Objection 10 argues that the district court should not "group" the two offenses under sec.3D1.2. Counsel apparently believed that non-grouping would enable the district judge to treat the total offense level as 15. Actually it would have increased the offense level to 22, because it would have added a second "unit" with a corresponding increase under sec.3D1.4. The district court denied this request, grouped the offenses, and as sec.3D1.3(a) requires settled on a final offense level of 20. Buckowich's criminal history of I produced the 33-41 month sentencing range.

Another document filed by Buckowich's lawyer, captioned "Memorandum re: Sentencing", argued for a downward departure on several grounds, including Buckowich's medical problems (she is a diabetic and has been diagnosed with cancer), the consequences suffered in her private life (her husband left her as a result of these events, and she is financially ruined), her assertion that someone else was the mastermind of the crime, and her contention that Ralph should have been able to avoid the loss he suffered. The district judge did not think that these circumstances, individually or collectively, justified a downward departure, and under Franz such a decision is not reviewable.

On his feet at sentencing, counsel offered an admixture of these arguments. He suggested that it is unjust that the base offense levels for fraud and money laundering are so different; argued that money laundering was just incidental to Buckowich's fraud offense, making sec.2F1.1 the more appropriate guideline to use; and continued:

[T]his circuit agrees with several other circuits in the grouping theory versus the distinct offense theory of at least four other circuits which conflict with this circuit. And fortunately, the Seventh Circuit grouping, as the probation department in grouping in taking the highest offense level, highest offense level in this case, if we have to use money laundering we go from the wire fraud of 6 to the money laundering of 17, even though these are monetary

instruments of personal checks in her account. Not within the heartland of cases I would suggest to the court that are within the ambit of application of the money laundering statute. Where does this leave us? What I'm going to suggest to the court is that the court follow the Eighth Circuit which is also a grouping circuit that follows the Seventh Circuit, and whatever guideline it applies it does a downward departure to make up for what could be an injustice in this case of going from a base offense level of 7 to 17.

This nearly incoherent argument drew the unsurprising response from the court that it would apply seventh circuit rather than eighth circuit law. That is the response that, according to Buckowich's appellate counsel, makes the error of supposing that departure was legally impossible.

Put grouping aside, for it has nothing to do with the subject. Counsel did at least use one of the code words of a request for a departure--the submission that the circumstances are not within the "heartland" of the applicable guideline. See Koon v. United States, 518 U.S. 81, 93-100 (1996). Departure is proper only when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. sec.3553(b). Lawyers and judges often use "outside the heartland" to allude to these statutory requirements. Counsel might have been suggesting two things: first, that the court start with the offense level of 20 generated by the money-laundering guideline and then depart downward on the ground that this was an unusually innocuous use of banks to shuffle funds, not as threatening as the level-20 brand of money laundering; second, that the court should simply disregard the bank transactions (and thus the money-laundering guideline) and base the sentence exclusively on the fraud guideline. Most of counsel's submission, both written and oral, seems to support the second theme, as does his reliance on United States v. Woods, 159 F.3d 1132 (8th Cir. 1998). But the district judge was right to dismiss this line of argument; Woods is incompatible with the law of this circuit. Buckowich was convicted of both wire fraud and money laundering; the judge in sentencing must consider both offenses and may not act as if the defendant had been convicted of just one.

Woods was convicted of bankruptcy fraud and money laundering; the money laundering consisted

in financial transactions to conceal funds from the bankruptcy court. The district judge decided that Woods' offense was a bankruptcy crime and that it bore none of the hallmarks of money laundering, which the district judge thought associated with organized crime and drug trafficking. Effectively, the district judge held, Woods should not have been charged with or convicted of money laundering, and he used the form of a downward departure to make the money laundering offense (and its higher guideline level) vanish. The court of appeals affirmed, evidently sharing the district court's view that because "the underlying offense was . . . fraud, and not drug trafficking or some other offense typical of organized crime," 159 F.3d at 1134, the money laundering guideline need not be applied. In support of this conclusion, the eighth circuit observed (id. at 1135-36) that in 1995 the Sentencing Commission had concluded that the money laundering guideline often increased penalties unduly and proposed an amendment that would conform the offense level for money laundering to the offense level for the underlying offense. The district judge had done the same thing, the eight circuit held, and could not be reversed.

Although the Sentencing Commission concluded in 1995 that the offense level for money laundering should track the offense level for the underlying offense, Congress did not share this view. It enacted legislation (Pub. L. 104-38, 109 Stat. 334 (Oct. 30, 1995)) that nullified the proposed amendment, which would have abrogated all punishment for money laundering unless that were the only offense of which the defendant was convicted. An unsuccessful proposal for a change in the guidelines is a poor reason for a downward departure, which would adopt the amendment at retail even after Congress has rejected it at wholesale. Although Woods applied the term "departure" to this process, it would be more accurately called nullification of the legislative decision, a refusal to use the guidelines as currently written. The eighth circuit's position cannot be reconciled with United States v. Jackson, 103 F.3d 561, 571-73 (7th Cir. 1996), in which this circuit nixed a similar maneuver in drug cases. The Commission proposed changing the ratio between crack and powder cocaine. After Congress rejected that proposal, in the same statute that rejected the money-laundering proposal, defendants contended that district judges could base departures on the views reflected in the proposed amendment. We disagreed, and the rationale of Jackson also precludes accepting the eighth circuit's view in Woods. The eighth circuit's approach, which relied heavily on a disapproved proposal for

amendment and a follow-up report prepared by the Department of Justice (159 F.3d at 1135-36) also appears to violate 18 U.S.C. sec.3553(b), which provides: "In determining whether a circumstance was adequately taken into consideration [for purposes of departure], the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." (Emphasis added.) The eighth circuit considered matters that are not on this list, an approach that Jackson held forbidden. 103 F.3d at 573. (Woods did not cite either Jackson or this part of sec.3553(b).) As long as the guidelines continue in their current form, a defendant convicted of both fraud and money laundering must take, as his base offense level, the greater of the levels generated by the two distinct guidelines.

To say that the district judge must start with the money-laundering guideline (if it is the higher) is not to say that it must stop there. It may conclude that particular conduct was abnormally innocuous and depart downward on that account. But under the law of this circuit departure must be a reasoned step, linked to the structure of the guidelines, and any departure greater than two offense levels requires strong reasons. United States v. Thomas, 930 F.2d 526, 531 (7th Cir. 1991); United States v. Schmude, 901 F.2d 555, 560 (7th Cir. 1990); United States v. Ferra, 900 F.2d 1057, 1061-63 (7th Cir. 1990). Tossing out an entire guideline, as Buckowich proposed to do (and as Woods approved), would not be a measured approach linked to the structure of the guidelines; it would instead reflect profound disagreement with the current structure of the guidelines and a preference for the failed 1995 amendment. Disagreement with the guidelines is not a proper reason for departure. United States v. Krilich, 159 F.3d 1020, 1030 (7th Cir. 1998); United States v. Scott, 914 F.2d 959, 963 (7th Cir. 1990). Buckowich did not ask the district judge to depart by a level or two, to 19 or 18. She wanted a reduction to 15, achieved by disregarding the money-laundering guideline. That request the district judge properly rejected as outside legal bounds. To the extent a request for a smaller reduction may be inferred from the record, the district court was entitled to deny it too; as we have said, the top-of-range sentence demonstrates that the judge was not inclined to exercise discretion in Buckowich's favor.

Affirmed

RIPPLE, Circuit Judge, dissenting. Because I believe Ms. Buckowich's arguments to the district court encompassed a request for a modest departure, and because I do not believe it is clear from the record that the district court understood its ability to grant such a departure, I respectfully dissent.

Ms. Buckowich's arguments to the district court are, as my colleagues point out, hardly a model of clarity. Nevertheless, I believe a fair reading of Ms. Buckowich's submissions encompasses the argument that her actions were "outside the heartland" of money laundering cases. Koon v. United States, 518 U.S. 81, 98 (1996). Specifically, Ms. Buckowich's actions constituted, in the language of the majority, "unusually innocuous use of banks to shuffle funds." Slip op. at 5.

The district court did not respond directly to this argument. Perhaps it did not believe Ms. Buckowich was making this claim. Perhaps it recognized the argument, but did not believe that Ms. Buckowich's transgressions fell "outside the heartland" of money laundering cases, or it simply was not inclined to exercise discretion in her favor. Perhaps, however, the district court did not understand that it had the discretion to depart in such circumstances.

The majority does not discount entirely this latter possibility. Nevertheless, because the district court's "top-of-range sentence demonstrates that the judge was not inclined to exercise discretion in Buckowich's favor," remanding would not affect Ms. Buckowich's sentence. Slip op. at 8. I do not believe that a "top-of-range" sentence eliminates the possibility that the district court would have granted Ms. Buckowich a departure had it understood its ability to do so.

Ideally, a district court, even in the face of a muddled presentation by counsel, informs the parties (and the appellate court) of the arguments it is addressing, its actions on those arguments, and the analytical process employed in reaching its decision. In the absence of such explanations, an appellate court is left with only circumstantial evidence as to the district court's reasoning in reaching the end result.

In the present case, the circumstantial evidence is not sufficient to determine whether the district court understood that it could grant a "heartland" departure in these circumstances and whether the district court would have granted

such a departure if it properly understood its authority. I, therefore, would remand the case to the district court. The district court, of course, could determine that Ms. Buckowich's actions did not meet the criteria for a "heartland" departure. It also could refuse to exercise its discretion in her favor. In the absence of a clearer statement, however, I cannot be confident what path the district court would follow. I, therefore, respectfully dissent.