In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3227

United States of America,

Plaintiff-Appellant,

v.

Jose Bautista,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 97--Joan B. Gottschall, Judge.

Argued January 17, 2001--Decided July 12, 2001


   Before Easterbrook, Evans, and Williams,
Circuit Judges.

   Williams, Circuit Judge. Jose Bautista, a
resident alien of the United States, pled
guilty to one count of traveling in
interstate commerce with the intent and
for the purpose of engaging in sexual
acts with a minor, in violation of 18
U.S.C. sec. 2423(b). At sentencing, the
district court found that Bautista would
suffer an "enormously draconian
deprivation" as a result of the
deportation that would likely follow his
sentence, and departed downward by three
levels from the applicable sentencing
guideline range. The government appeals.
We conclude that the district court
abused its discretion in departing
downward, and vacate the sentence and
remand for resentencing.

I

   Jose Bautista initiated and engaged in
sexually explicit communications in
Internet chatrooms and by electronic
mail, and eventually arranged to meet and
have sex, with a person whom he believed
to be a 13-year old girl. The person
turned out to be an undercover police
officer, and Bautista was arrested after
he traveled from Maryland to Illinois for
their planned meeting. In his plea
agreement, Bautista admitted that he
engaged in similar communications in the

past with other minor females across the country. At the time of his arrest, Bautista was 26 years old, had regular employment, and owned rental properties.

At the sentencing hearing, Bautista's mother, brother, and sister testified that they came to the United States in 1987 from Peru to get away from Bautista's father, Laureano Bautista ("Laureano"), an alcoholic who physically and emotionally abused Bautista, his mother, and siblings. They reported that Laureano followed the family to the United States, where the abuse worsened, but returned to Peru in 1996 after Mrs. Bautista obtained a divorce. They said that Bautista has no friends or family in Peru other than his father.

A clinical psychologist who began treating Bautista after his indictment submitted a statement to the court. The psychologist diagnosed Bautista as having a "schizoid personality disorder," which he described as a "pervasive pattern of detachment from social relationships and a restricted range of expression of emotions in interpersonal settings." Individuals with this disorder prefer spending time by themselves and appear indifferent to opportunities to develop close relationships, and appear to derive little satisfaction from being part of a family or other social group. He also described Bautista as "an example of a psychological phenomenon known as learned helplessness," with little defenses against hostility. In the psychologist's opinion, Bautista would suffer further psychological harm if he returned to his father's house. The psychologist also reported, however, that two employers who have known Bautista for over ten years describe him as an intelligent, kind, and responsible worker.

In his motion for a downward departure, Bautista argued that the conditions of his confinement would be more severe for him than for other offenders because his status as a deportable alien disentitles him to serve any part of his sentence in a minimum security prison or community confinement. Bautista also argued that deportation would be especially harsh on him because he could not live or communicate with his father the only person he knew in Peru--and would be completely cut off from his family and home in the

United States. The district judge stated that she would not depart downward based on any effect deportation would have on his conditions of confinement, but did depart downward three levels based on her finding of "the enormously draconian deprivation that the deportation is going to effectuate in this case." She further explained her reasons:

I think that there are circumstances in this case that do take it outside the heartland. I think that we have a young man who is very injured . . . . [T]he idea of this young man, who is so isolated, and whose only real meaningful contacts are with his family[,] being separated from his family and being sent back to a place where he hasn't been since he was 12 years old, where the only person he knows is the father who has terrorized him I think is quite unusual. Very unusual. And so I don't think this is in any sense a normal case.

Finally, the judge's written order stated that the departure was warranted because "the impact of deportation on this defendant is itself a punishment so severe as to remove this case from the heartland." The court sentenced Bautista to 18 months' imprisonment, the low end of the resulting guideline range./1

II

   A court has authority to depart from the United States Sentencing Commission Guidelines in cases presenting "mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission." Koon v. United States, 518 U.S. 81, 94 (1996). The Guidelines specify various factors that are apt to make a case unusual, and specify whether certain factors are or are not ordinarily relevant to the decision to depart from the applicable guideline range. Id. at 93-94. Some factors identified by the Commission can never be the basis for a departure (including race, sex, and national origin), but other than the prohibited factors, the Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Id. at 106. A factor not mentioned in the Guidelines may be a

basis for departure only if it places the case "outside the heartland of cases contemplated by both the specific, relevant guideline(s) and the Guidelines as a whole." United States v. Schulte, 144 F.3d 1107, 1109 (7th Cir. 1998). We review a district court's decision to depart from the Guidelines for abuse of discretion, but "whether a particular factor is a permissible basis for departure under any circumstances is a question of law" that we review de novo. Koon, 518 U.S. at 100.

We have previously considered whether a defendant's deportable alien status--a factor not mentioned in the Guidelines-- is a permissible consideration at sentencing. In United States v. Gonzalez-Portillo, 121 F.3d 1122, 1125 (7th Cir. 1997), we held that, for a defendant sentenced under the guideline for unlawfully entering the United States, U.S.S.G. sec. 2L1.2, the prospect of deportation was "certainly accounted for" in that guideline, and therefore could not be a basis for a departure. But in a later case involving a crime that may or may not involve illegal entry or presence in the United States (importing heroin), we reversed the district court's holding that it did not have authority to depart. United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997). For that crime, we held that there was no basis for conclud ing that the Guidelines took the defendant's alien status into account in setting the level for the offense, and therefore the court was free to consider the defendant's argument that the conditions of his confinement would be exceptionally harsh on him because, for example, he would be unable to serve any part of his sentence in a minimum security facility. Id. Then, in United States v. Guzman, 236 F.3d 830, 834 (7th Cir. 2001), another case like Farouil involving a crime that did not invariably involve illegal entry into the United States (conspiracy to distribute methamphetamine), we rejected the defendant's argument that her expected deportation was itself punitive and therefore warranted a reduction in her sentence because such an argument implied that "any alien who commits a crime should receive a shorter sentence than a citizen."

As in Farouil and Guzman, Bautista's

crime--traveling in interstate commerce to have sex with a minor--does not depend on illegal entry or presence into the United States. The government contends, however, that Guzman forecloses any consideration of deportable alien status in making a decision to depart from the Guidelines except to the extent that status affects the defendant's conditions of confinement. However, unlike the defendant in Guzman, Bautista does not rely solely on the fact of his impending deportation (a prospect shared by all aliens who commit a deportable offense), but instead points to individualized circumstances that, he argues, make deportation extraordinarily harsh for him. In rejecting the deportation-as-punishment argument in Guzman, and in approving consideration of the effect alien status may have on conditions of confinement in Farouil, we did not rule out consideration of all other conceivable circumstances that might be related to deportation.

Even so, the government contends that we should rule out consideration of the alleged harsh effects of deportation in this case. Basing a downward departure on the harsh effects of deportation is irrational, according to the government, because the shortened sentence merely hastens the onset of those effects. See United States v. Restrepo, 999 F.2d 640, 647 (2d Cir. 1993). But the apparent paradox disappears if one views the departure not as remedying the consequences of deportation, but as an offset to those consequences--just as in Farouil, where we held that a departure could be warranted to offset unusually harsh conditions of confinement. See 124 F.3d at 847; see also United States v. Mason, 966 F.2d 1488, 1496 n.7 (D.C. Cir. 1992) (observing that reduction in sentence may be proper to offset the additional punishment of solitary confinement necessary to protect defendant from abuse in prison). The analogy with Farouil is not a perfect one, because the circumstances relied upon by the district court here concern not what will happen during the term of the defendant's sentence, but instead what may occur afterward. But we see nothing in the Guidelines that forbids consideration of extralegal consequences that follow a sentence as grounds for a departure. In Koon, for example, the

Supreme Court reversed the Ninth Circuit's holding that career loss following imprisonment could never be relevant to sentencing. 518 U.S. at 110. And because the circumstances urged here (the claimed "draconian" effects of deportation on Bautista) are not prohibited considerations under the Guidelines, we do not rule out consideration of them in appropriate cases. See id. at 106-07 (holding that "for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission"); see also United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999) (en banc) ("Koon makes clear that a court may not categorically exclude the consideration of any one factor"); United States v. Charry Cubillos, 91 F.3d 1342, 1344 (9th Cir. 1996).

However, that an "unmentioned factor" may be considered does not mean that courts have unfettered authority to depart whenever that factor is invoked. Instead, when evaluating whether to depart based on such a factor, the judge "is to strive to remain within the conceptual universe of the guidelines, moving by analogy from its explicit provisions and stated objectives to the novel situation presented by the case before him," Guzman, 236 F.3d at 834, bearing in mind "the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'" Koon, 518 U.S. at 96 (quoting 1995 U.S.S.G. ch. 1, pt. A, p. 6); see also Schulte, 144 F.3d at 1109-10 (stating that the power to depart based on an unmentioned factor is "quite limited").

Viewed in the framework of the Guidelines as a whole, and by analogy to the various grounds for departure identified in the Guidelines, we are convinced that a downward departure based on collateral consequences of deportation is justified only if the circumstances of the case are extraordinary, and that it is impossible to conclude that this is such a case. Bautista's primary argument is that he has lived for half his life in the United States and that deportation will be especially harsh because he will be cut off from his family and home./2 Departure on this basis would be akin to

one based on "family ties"--a discouraged factor that is grounds for departure only in extraordinary circumstances. See U.S.S.G. sec. 5H1.6; United States v. Carter, 122 F.3d 469, 474 (7th Cir. 1997); United States v. Lipman, 133 F.3d 726, 730 (9th Cir. 1998). Similarly, to the extent that permanent separation from family, job, and the like are the necessary consequences of deportation for all aliens, or at least for those aliens who have made the United States their home, an argument based on these effects comes very close to the deportation-as-punishment theory that we rejected in Guzman. See 236 F.3d at 834; see also United States v. Tejeda, 146 F.3d 84, 88 (2d Cir. 1998) (per curiam) ("[D]eportation alone does not constitute an extraordinary consequence that would justify a downward departure"); United States v. Leandre, 132 F.3d 796, 808 (D.C. Cir. 1998). Here, there is nothing extraordinary about Bautista's relationship with his mother and siblings, or his separation from them upon his incarceration and deportation. See United States v. Wright, 218 F.3d 812, 815-16 (7th Cir. 2000) (reversing departure based on ordinary effect of mother's long incarceration on her young child); Carter, 122 F.3d at 474 ("'Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.'") (quoting United States v. Johnson, 964 F.2d 124, 128-30 (2d Cir. 1992)).

Furthermore, we have held that childhood abuse and the resulting psychological damage are discouraged factors that would justify a departure only in extraordinary circumstances. United States v. Pullen, 89 F.3d 368, 370-72 (7th Cir. 1996). Child abuse and its resulting emotional scars are in one sense extraordinary because not all defendants sentenced for traveling in interstate commerce with the intent to have sex with a minor will have such a history. However, to justify a departure, discouraged factors such as these must be "present to an exceptional degree or in some other way [that] makes the case different from the ordinary case where the factor is present." Id. at 371 (quoting Koon, 518 U.S. at 96). Although Bautista's upbringing was undeniably unfortunate, the physical and emotional

abuse and his resulting personality disorders are not extraordinary in comparison with other cases where those factors are present, see Pullen, 89 F.3d at 372 (holding that district court would have abused its discretion in granting departure based on mental and emotional conditions linked to beatings and sexual abuse the defendant suffered as a child and teenager); see also United States v. Rivera, 192 F.3d 81, 85 (2nd Cir. 1999) (holding that departure based on mental and emotional conditions caused by defendant's having been beaten and burned as a youth would have been an abuse of discretion), even in combination with the separation from his family that is the ordinary result of his incarceration and deportation. Cf. U.S.S.G. sec. 5K2.0, cmt (noting that a combination of individually adequate factors may justify a departure in "extremely rare" cases)./3

III

   Because we conclude that the district court abused its discretion in departing downward from the applicable sentencing range, we Vacate the sentence and Remand the case for resentencing.

FOOTNOTES

/1 Without the departure, the sentencing range would have been 27-33 months.

/2 The label Bautista attaches to this argument, "cultural assimilation," adds little to this analysis because it blurs the distinction among the various considerations that could be involved when that or similar terms are used. For example, this case is not like United States v. Lipman, 133 F.3d 726, 730-31 (9th Cir. 1997), which considered the effect a defendant's "cultural assimilation" to the United States could have on culpability, and not, as here, its alleged effect on the harshness of deportation. It is also distinguishable from those cases considering whether a defendant's "cultural heritage" (i.e., ethnicity) is ever a proper consideration at sentencing. See, e.g., Guzman, 236 F.3d at 831-33; United States v. Yu, 954 F.2d 951, 953-54 (3d Cir. 1992) ("cultural differences").

/3 Bautista does not argue on appeal that the judge believed that she was without authority to grant a departure based on any alleged effect Bautista's status as a deportable alien may have on his conditions of confinement. However, if the

judge's rejection of this argument was based on a misunderstanding of her authority, she is free to reconsider her decision on remand. See Guzman, 236 F.3d at 834; Farouil, 124 F.3d at 847.