# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3935
_____

United States of America,　　　*
　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　 *
　　　　　　　　　　　　　　　*
Nolberto Lopez-Salas,　　　　　 *
　　　　　　　　　　　　　　　*
　　　　　　Appellee.　　　　　 *

_____

No. 00-3967
_____

Appeals from the United States
District Court for the
District of Nebraska.

United States of America,　　　*
　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　 *
　　　　　　　　　　　　　　　*
Jesse V. Ramos, also known as　 *
Eleasar Andrade,　　　　　　　 *
　　　　　　　　　　　　　　　*
　　　　　　Appellee.　　　　　 *

_____

Submitted: June, 13, 2001

Filed:　 September 17, 2001

_____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

Appellees were convicted of unrelated drug offenses. Before sentencing, the Immigration and Naturalization Service (INS) filed a detainer against each, indicating they would be deported upon completion of their sentences. The district court departed downward because the appellees would not be eligible to spend the last six months of their sentence in a half-way house, nor would they be eligible for early release upon successful completion of a drug treatment program. The government appeals the departure decision. We reverse.

I.    BACKGROUND

Lopez-Salas was born in Mexico. After completing high school and medical training, he entered this country illegally. He was arrested on multiple drug charges and ultimately pled guilty to possession with intent to distribute cocaine and methamphetamine. Following his arrest, the INS filed a detainer designating him as an alien subject to deportation at the end of his prison sentence.

Ramos was also born in Mexico, but his parents brought him to the United States when he was five, and he has lived most of his life in this country. He has previously served prison sentences and has been deported twice. His current conviction is pursuant to a guilty plea on a charge of intent to distribute methamphetamine. Like Lopez-Salas, the INS filed a detainer designating Ramos as an alien subject to deportation at the end of his prison sentence.

At sentencing, the district court received evidence concerning the Bureau of Prison's (BOP) policies toward deportable aliens. Generally, although deportable

aliens may participate in most prison programs such as drug treatment or work, they are not eligible for several statutory benefits. Deportable aliens are not eligible for assignment to minimum security facilities, nor for up to one year early release upon completion of a drug treatment program, nor for serving the final ten percent (up to six months) of their sentence in a half-way house or other community confinement. Based on these latter two factors, the district court, in separate sentencing hearings, concluded the appellees were denied benefits solely on the basis of their status as deportable aliens. Finding this effect was not contemplated in the United States Sentencing Guidelines, the court granted a one-year downward departure to both Ramos and Lopez-Salas. Before the departure, Ramos was subject to a guidelines range of 168 to 210 months; Lopez-Salas faced a range of 108-135 months. After the departure they were sentenced to 156 months (thirteen years) and 96 months (eight years) respectively.

## II.    ANALYSIS

We will reverse a district court's decision to depart downward from the guidelines only for an abuse of discretion. Koon v. United States, 518 U.S. 81, 91 (1996).

When imposing a sentence, a district court is limited to a sentence falling within the range specified by the guidelines if the case is an ordinary one. Id. at 92. In order to preserve some flexibility and discretion for the district court to respond to unique individual circumstances, Congress allows the court to depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

The Sentencing Commission intended for each guideline to carve out a "'heartland,' a set of typical cases embodying the conduct that each guideline

describes." U.S. Sentencing Guidelines Manual, ch. 1, pt. A(4)(b) (2001) [hereinafter U.S.S.G]. The guidelines specify certain factors that are encouraged or discouraged.[1] See U.S.S.G. §§ 5H, 5K. Other than for crimes related directly to alien status, such as illegal re-entry into the country, the guidelines do not mention the effects of alien status as a departure factor. United States v. Restrepo, 999 F.2d 640, 644 (2d Cir. 1993). If a factor is unmentioned in the guidelines, the court must consider the "structure and theory of both the relevant individual guidelines and the guidelines taken as a whole," to determine whether the factor makes the case unusual or atypical enough to take the case out of the heartland. Koon, 518 U.S. at 96 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993)). In doing this, the court must be cognizant of the fact that the Commission expected departures based on unmentioned factors would be "highly infrequent." U.S.S.G. Ch. 1., Pt. A(4)(b).

We have not previously considered whether alien status and the collateral consequences flowing from that status justify departure.[2] The Second Circuit held that although alienage may be a basis for departure in some circumstances, the particular collateral consequences the defendant faced in that case as a result of being a deportable alien (ineligibility for placement in community-confinement for the last six months of his sentence, post-imprisonment detention while awaiting deportation, and deportation itself) could not support a departure. Restrepo, 999 F.2d at 644-47. Several other circuits have followed the rationale of Restrepo. See United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996), overruled on other grounds by United

_____

[1]National origin is a prohibited factor. However, a person's legal status as a deportable alien is not synonymous with national origin. See United States v. Restrepo, 999 F.2d 640, 644 (2d Cir. 1993).

[2]In dicta of previous opinions, we have expressed our doubts about collateral consequences flowing from alien status as a basis for departure. United States v. Bahena, 223 F.3d 797, 807 (8th Cir. 2000); United States v. Navarro, 218 F.3d 895, 898 (8th Cir. 2000).

States v. Campbell, 181 F.3d 1263 (11th Cir. 1999); United States v. Mendoza-Lopez, 7 F.3d 1483, 1487 (10th Cir. 1993); United States v. Nnanna, 7 F.3d 420, 422 (5th Cir. 1993). To the extent that these cases suggest that factors related to alien status may never be a basis for departure, they are inconsistent with Koon, which made it clear that courts may not declare what sentencing factors are inappropriate in every circumstance. 518 U.S. at 106; see also United States v. DeBeir, 186 F.3d 561, 569 (4th Cir. 1999) (noting that the above cases were all decided prior to Koon, which limits the authority of appellate courts to categorically limit possible departure factors); United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997) (same).

Three circuits have held that alienage, or the collateral consequences flowing therefrom, may be a basis for departure in some circumstances.[3] Farouil, 124 F.3d at 847; United States v. Charry Cubillos, 91 F.3d 1342, 1344 (9th Cir. 1996); United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994). We agree. As a factor unmentioned in the guidelines, alien status and the collateral consequences flowing therefrom may be an appropriate basis for departure.

However, just because an unmentioned factor may be considered for departure, "does not mean that courts have unfettered authority to depart whenever that factor is invoked." United States v. Bautistia, No. 00-3227, 2001 WL 783740, *4 (7th Cir. July 12, 2001). The court must still articulate why that factor is sufficiently atypical to justify a departure. See id. (reversing a downward departure based on consequences surrounding deportation because the defendant-alien's circumstances were not "extraordinary"); Smith, 27 F.3d at 655 (holding that departure based on increased severity in sentence due to alien status is only appropriate if the difference is

---

[3]Even Restrepo and the cases following it acknowledged in a very general sense that alienage may be a basis for departure, but seemed to hold that the particular collateral consequences flowing from alienage in those cases could never be a basis for departure. 999 F.2d at 644; see also Veloza, 83 F.3d at 382.

substantial, undeserved and the court has high degree of confidence that it will apply for substantial part of defendant's sentence). Thus, we must examine the specific collateral consequences flowing from alien status upon which the district court based its departure.

### A.    Ineligibility for Early Release

The particular question of ineligibility for early release after completing the drug treatment program is one of first impression in any circuit court. In examining how this factor relates to the structure and theory of the guidelines, we must first consider the statutory backdrop against which the guidelines operate. See Charry Cubillos, 91 F.3d at 1345 (remanding case to district court to consider departure decision based on alien status according to structure and theory of guidelines, including why the deportable alien was ineligible for minimum security and community confinement).

The BOP has been directed by Congress to provide appropriate substance abuse treatment for each prisoner it determines has a treatable condition of substance addiction. 18 U.S.C. § 3621. To this end, the BOP must provide residential substance abuse treatment, and make arrangements for appropriate after care. Id. § 3621(e)(1). As an incentive to prisoners convicted of nonviolent offenses, the BOP may reduce their sentence by up to one year when they successfully complete the treatment program. Id. § 3621(e)(2)(B). The BOP possesses substantial discretion in determining who is eligible for early release upon completion of the drug treatment program and how early the release should be. See Lopez v. Davis, 531 U.S. 230 (2001) (upholding a BOP regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm).

Based on the discretion granted it under the statute, the BOP has categorically excluded from early release several groups of inmates who would otherwise be eligible

under the statute. Prisoners who have an INS detainer filed against them are only one group. 28 C.F.R. § 550.58(a)(1)(i). The regulation also categorically excludes: pretrial inmates, contractual boarders (such as inmates from the District of Columbia or the military), inmates with prior convictions of certain serious offenses, inmates ineligible for a later community-based program determined according to the warden's professional discretion, and inmates whose current offense is a non-violent felony under the statute but otherwise involved threats or risks of violence. 28 C.F.R. § 550.58(a)(1).

In Lopez the Supreme Court held that it was within the BOP's discretion, as granted to it under 18 U.S.C. § 3621(e)(2), to make rules categorically excluding certain types of inmates from receiving early release. 531 U.S. at 235. Lopez only examined that portion of the regulation excluding inmates whose current conviction was a non-violent felony, but nonetheless involved possession of a firearm. Id. at 236. However, we see no difference between the categorical exclusion examined in Lopez and the one involved here. Thus, it is within the BOP's discretion to categorically exclude inmates who have had INS detainers filed against them from eligibility for early release after completing the treatment program.

With this structure in mind, we see two levels on which appellees have failed to distinguish their situations as atypical or unusual. First, they do little to differentiate their individual cases from that of any deportable alien who may qualify for the drug treatment program. Second, and more importantly, they fail to distinguish the plight of a deportable alien from that of any other class of inmates that would qualify for early release but for the fact that they are categorically prohibited from consideration by BOP regulations. Thus, the district court was incorrect when it based the departure on the fact that the status of being a deportable alien results in less benefits than an American citizen would have available in the penitentiaries.[4] If departure is appropriate for

---

[4]We have mentioned only those who are categorically prohibited under the BOP regulation. This does not include the large number of inmates categorically prohibited

deportable aliens who are categorically prohibited from early release, then a departure would also seem appropriate for the other groups categorically excluded from eligibility. Being categorically excluded from receiving early release is not, by itself, an unusual or atypical factor, nor will departures based on this factor be highly infrequent.

This is not to say that this factor can never be a basis for departure. We recognize that "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." Koon, 518 U.S. at 106. Rather, in order for a district court to base a departure on the fact that a defendant, as a deportable alien, is not eligible for early release, even if he completes the drug treatment program, there must be additional facts concerning the defendant's individual circumstances to make the particular case atypical or unusual. See Bautistia, 2001 WL 783740, at *4 (holding that departure based on the collateral consequences of deportation is proper only if defendant's circumstances are "extraordinary"); Smith, 27 F.3d at 655 (holding that downward departure based on defendant's status as a deportable alien is only appropriate if the defendant would suffer "a fortuitous increase in the severity of his sentence" as a result of that status).

## B. Conditions of Confinement

There are two issues in this case related to conditions of confinement. Deportable aliens are not eligible for minimum security facilities and they are not eligible to serve the final ten percent of their sentence (up to six months) in a half-way house. The district court declined to base its departure on the general increased severity in conditions of confinement based on BOP policy, stating "I'm less concerned about the fact that he doesn't have a chance to go to a minimum security place. It seems to me that's well within the discretion of the Bureau of Prisons." Sentencing

under the statute because they were convicted of a violent crime.

Transcript of Lopez-Salas at 77. Although it is not entirely clear from this statement whether the court declined to depart on this factor based on an exercise of its discretion in light of the facts of these cases, or whether it thought it did not have the authority to depart, we read it to indicate the district court thought it did not have the authority to depart. Such a decision is reviewable on appeal.

Congress has directed the BOP, "to the extent practicable," to assure that a prisoner will spend a reasonable part (but not more than six months) of the last ten percent of his sentence "under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." 18 U.S.C. § 3624(c). The "to the extent practicable" language in the statute gives the BOP some measure of discretion in assigning inmates to a half-way house during the last portion of their incarceration. Restrepo, 999 F.2d at 645. According to BOP policy, a deportable alien is not eligible for this six months of community-confinement. The BOP is given even more flexibility in assigning any prisoner to a particular correctional facility. 18 U.S.C. § 3621(b). It is the policy of the BOP to automatically assign a higher security factor to deportable aliens, making them ineligible for minimum security prisons. Sentencing Transcript of Lopez-Salas at 63. Although the BOP policy allows a change in this designation according to an individual's situation, the BOP official testifying at the sentencing hearing could not recall an instance of this occurring in his region. Id. at 67.

The circuits that have considered this issue since Koon have held that increased severity in the conditions of confinement resulting from alien status is a possible basis for departure in some circumstances. See United States v. Davoudi, 172 F.3d 1130, 1134 (9th Cir. 1999); Farouil, 124 F.3d at 841, 847; see also Smith, 27 F.3d at 654-55 (holding prior to Koon, that increased severity in conditions of confinement may be a departure factor). We agree. However, the fact that a deportable alien may be subject to some increases in the severity of the conditions of confinement alone is not sufficient to make his case atypical or unusual.

In its pre-Koon decision, the Second Circuit in Restrepo found these conditions of confinement factors inappropriate for downward departure, in large part because the court thought allowing departures would infringe upon the discretion granted to the BOP under the statutory scheme. Restrepo, 999 F.2d at 645; but see Smith, 27 F.3d at 654 (disagreeing with the conclusion that granting a departure would infringe upon the BOP's discretion). With respect to the six months in a half-way house, the Second Circuit thought it arguable that the statute was not meant to apply to deportable aliens since its express purpose was to ease an inmate's transition back into the community and deportable aliens are released from prison into the custody of the Attorney General pending deportation. Id.; but see Smith 27 F.3d at 654 (agreeing with this possible interpretation of the statute but noting that the BOP's then-current regulations did not interpret it in that manner).

The reasoning of Restrepo, although insufficient to justify a blanket prohibition against considering conditions of confinement faced by deportable aliens, counsels strongly against allowing a departure based on that general factor alone. See Smith, 27 F.3d at 655 (noting that since the BOP has discretion in determining conditions of confinement and makes determinations in that area based on a wide variety of factors in addition to alien status, departure based on increased severity in conditions of confinement faced by deportable alien will be quite rare). Also, according to our previous analysis, the fact that ineligibility results from a proper operation of the statutory scheme counsels against granting departures to deportable aliens, unless there are additional facts making their situation atypical.

Therefore, a departure on this basis is only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's

sentence.[5] Smith, 27 F.3d at 655; see also United States v. Guzman, 236 F.3d 830, 834 (7th Cir. 2001) ("we emphasize that . . . status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for . . . [an] offense"). When contemplating such a departure, a district court should consider why a deportable alien is generally ineligible for minimum security or half-way house confinement.[6] Charry Cubillos, 91 F.3d at 1345.

The guidelines mandated a minimum sentence of nine years for Lopez-Salas and fourteen years for Ramos. There is no indication in the record that either would otherwise have qualified for a minimum security assignment. In light of sentences of this length, the fact that appellees are ineligible for half-way house assignment for the

---

[5]For example, in United States v. Bakeas, the district court departed downward because although the guidelines "contemplate a relatively light imprisonment [for defendant's offense], typically served in a minimum security setting or community confinement, [defendant], because he is not a citizen, would do the same time in a substantially more punitive environment." 987 F. Supp. 44, 46 (D. Mass. 1997). In that case, the guidelines called for a one-year sentence that would normally either be served in community confinement, or at most, in a minimum security prison camp. Id. BOP policy would have transformed this sentence into one year at a medium security prison, a "substantially more punitive environment." Id. Thus, the defendant's situation in that case satisfied the criteria described in Smith for a possible departure: that it substantially increased the severity of the conditions of confinement, undeservedly, for a substantial portion of the defendant's sentence. See also United States v. Simalavong, 924 F. Supp. 610 (D. Vt. 1995) (departing downward in a similar situation).

[6]For example, we have noted that "[a deportable alien] is considered a greater escape risk, and is therefore subjected to more onerous conditions of confinement. . . . Congress has virtually plenary power over immigration matters, and it has the right to determine the conditions upon which noncitizens are allowed to remain in this country." Navarro, 218 F.3d at 898.

last six months because the BOP considers deportable aliens security risks is not, alone, an exceptional increase in the severity of the conditions of confinement.

## III. CONCLUSION

For the foregoing reasons we reverse the sentences and remand to the district court for re-sentencing consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The defendants' status as deportable aliens unnecessarily places them in a more restrictive status of confinement, and denies them access to BOP's drug treatment, early release, and community confinement programs that are otherwise available to the general prison population. The district court had the authority to depart downward on the basis of the defendants' immigration status, and did so. Absent an abuse of discretion, that decision is not subject to our review. See Koon v. United States, 518 U.S. 81, 91 (1996) ; United States v. Navarro, 218 F.3d 895, 898 (8th Cir. 2000) (finding that a discretionary decision not to depart from the Sentencing Guidelines is unreviewable absent either an unconstitutional motive or a court's legally erroneous determination that it lacked authority to consider a mitigating factor); U.S. Sentencing Guidelines Manual § 5K2.0 Commentary (2000) ("District Courts have an institutional advantage over appellate courts in making these sort of determinations, especially as they see so many more Guidelines cases than appellate courts do.") (quoting Koon, 518 U.S. at 98).

I agree with the district court that downward departures were appropriate on these occasions, where the defendants' immigration status alone increased the severity of their sentences. I would therefore affirm the district court's granting of defendants' motion for downward departure.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.