**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerardo PEREZ–MARTINEZ,**
**Defendant–Appellant.**

No. 03–1026.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 2003.

Decided Sept. 17, 2003.

Gail Joy Hoffman, Michelle L. Jacobs, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

John T. Wasielewski, Wasielewski & Erickson, Milwaukee, WI, for Defendant–Appellant.

Before KANNE, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

A jury found Gerardo Perez–Martinez ("Perez") guilty of one count of possession with intent to distribute marijuana and two counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). Perez was sentenced concurrently to 108 months' imprisonment and three years' supervised release on each count and ordered to pay $300 in special assessments and $6,550 in restitution. Perez challenges the prison time, arguing that the district court improperly imposed a two-level upward adjustment under U.S.S.G. § 3B1.4 for using a minor to commit a crime. Perez contends that his conduct did not warrant anything greater than a one-level increase. Because the district court properly applied the sentencing guidelines, we affirm its judgment.

## Background

Between December 2001 and May 2002, Perez and his brother sold cocaine and marijuana in the Green Bay, Wisconsin, area. Beginning in February, authorities made nine controlled buys from one or the other brother using a confidential informant ("CI") accompanied by an undercover officer. The CI wore a wire to record conversations with the brothers during each buy. In one of these transactions, which occurred on March 22, the CI ar-

ranged to purchase one pound of marijuana and one-half ounce of cocaine for $1,500. The CI was told to come to Perez's home, where he was met at the door by Perez's 16–year–old girlfriend. She told the CI that Perez was sleeping and led him to the bedroom. In the bedroom Perez, who was twenty-one years old, handed the cocaine and marijuana to the girl, and she in turn gave the drugs to the CI. The undercover officer, who waited outside near the doorway, gave Perez's girlfriend $1,500 for the purchase.

On June 7, Perez and his brother were arrested in connection with the controlled buys, which had yielded 120 grams of cocaine. Authorities also executed a search warrant for their apartment, and in a bedroom closet discovered a safe containing a .25 caliber semi-automatic handgun, two plastic bags holding a total of 114 grams of cocaine, and $10,250 in currency. On a closet shelf above the safe authorities also found three plastic bags together containing 557 grams of marijuana. Perez's girlfriend, when questioned, confirmed that the brothers purchased the safe together and that it was used to store their money. She also noted that when either brother went into the safe they forced everyone else to leave the bedroom.

In the common basement of the apartment building, officers also discovered approximately 615 kilograms of marijuana stored in a padlocked closet and an adjacent freezer. After his arrest Perez stated that a friend of the brothers, Hugo Campa, had arranged to receive and distribute that marijuana. Perez acknowledged, however, that he assisted Campa in purchasing boxes for the marijuana and renting a truck to transport it. He also admitted that he and his brother had helped Campa unload the boxes of marijuana into the basement. When he was arrested Perez was driving the rented truck, which contained a receipt indicating that Campa signed the rental agreement.

Perez, his brother, and Campa were charged together with possession with the intent to distribute cocaine and marijuana. After his brother and Campa pleaded guilty, Perez went to trial alone on the three counts in which he was named. The possession count related to the drugs found during the execution of the search warrant, and the distribution counts both related to controlled buys by the CI. None of the three counts related to the March 22 controlled buy involving Perez's girlfriend. Although finding Perez guilty on each count, the jury also determined that the amount of marijuana he was responsible for in the possession count did not exceed 100 kilograms. Nevertheless, the district court concluded that the 615 kilograms of marijuana in the basement of the brothers' apartment building was relevant conduct. After adding all the marijuana and cocaine found in the residence and purchased by the CI in the charged and uncharged controlled buys–including the drugs handled by Perez's girlfriend on March 22–the district court concluded that Perez was responsible for a total of 661.27 kilograms of marijuana (after converting the cocaine to its marijuana equivalent). Accordingly, under U.S.S.G. § 2D1.1, the offense guideline applicable to violations of § 841(a)(1), his base offense level was 28 because he was responsible for at least 400 kilograms but less than 700 kilograms of marijuana. U.S.S.G. § 2D1.1(c)(6). Perez received a two-level upward adjustment under § 2D1.1(b)(1) for possessing the gun found in the safe with drugs and money. He also received a two-level upward adjustment under U.S.S.G. § 3B1.4 for using a minor, his 16–year–old girlfriend, to commit an offense. After a two-level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, Perez's total offense level was 30, and with a criminal history

category of II his imprisonment range was 108 to 135 months.

## Analysis

■ On appeal Perez disputes only the district court's application of § 3B1.4. The general drug guideline under which Perez was sentenced, § 2D1.1, does not have a specific adjustment for use of a minor, but Chapter Three of the guidelines includes a role-in-the-offense adjustment, § 3B1.4, for such a scenario. As with other Chapter Three adjustments, § 3B1.4 is applicable to a wide array of offenses, not just drug offenses. In this case, Perez really does not contend that the district court misinterpreted or misapplied the guidelines as written. Section 2D1.1 unquestionably is the offense guideline applicable to § 841(a)(1) convictions, *see* U.S.S.G.App. A, at 477, and § 3B1.4 applies if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense," *id.* § 3B1.4. Note 1 to § 3B1.4 explains that "'used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.*, comment. (n.1). Perez admits that he "requested and obtained" his girlfriend's "assistance in executing a drug transaction" and that enlisting her participation was relevant conduct for the purpose of sentencing. Because § 3B1.4 applies "where the defendant affirmatively involved the minor in the commission of a crime," the district court properly increased Perez's offense level by two under § 3B1.4. *United States v. Ramsey*, 237 F.3d 853, 860 (7th Cir. 2001) (upholding adjustment where defendant directed minor to carry drugs and hand them to purchaser). *See also United States v. Rivera*, 248 F.3d 677, 682 (7th Cir.2001) (upholding adjustment where defendant directed minor to retrieve money to pay co-conspirator).

Still, in an argument grounded more in equity than in the plain language of the guidelines, Perez contends that the two-level increase for use of a minor under § 3B1.4 was inappropriate because § 3B1.4 does not account for the fact that the transaction involving his minor girlfriend related only to the equivalent of 3.197 kilograms of marijuana, a small amount in proportion to the 661.27 kilograms for which he was actually sentenced. In contrast, Perez notes, under U.S.S.G. § 2D1.2, an offense-conduct guideline specifically applicable to drug crimes involving the use of a minor as an essential element, "the degree by which the offense level is increased depends on the proportion of relevant conduct in which the defendant uses a minor." Although Perez's arguments are unclear, he appears to assert both that he should have been sentenced under § 2D1.2 and that he should have received a one-level increase by analogy to § 2D1.2. We will consider these arguments in turn.

■ Section 2D1.2 directs the sentencing court to assign a base offense level by applying the greatest of either: "2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances *directly involving* ... an underage ... individual; or ... 1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense." U.S.S.G. § 2D1.2(a) (emphasis added). So if hypothetically one of Perez's distribution convictions had been for the March 22 transaction, his base offense level would have been either two plus the 12 offense levels applicable to the quantity of drugs exchanged in the transaction involving the girl, *see* § 2D1.2(a)(1), or one plus the 28 offense levels applicable to all drugs included as relevant conduct, *see*

§ 2D1.2(a)(2). Because § 2D1.2 requires the sentencing court to apply the paragraph of subsection (a) resulting in the highest offense level, Perez would have received a base offense level of 29 (28 levels attributable to the drug quantity plus one level attributable to use of a minor) had the sentencing court been permitted to apply § 2D1.2. There is no upward adjustment in § 2D1.2 for use of a gun, so the only other adjustment would have been a two-level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, and Perez's total offense level would have been 27. Thus, Perez argues, § 2D1.2 would have resulted in a one-level increase, whereas § 3B1.4 resulted in a two-level increase as though he had used a minor in a level 28 offense. As the government explains, the defendant views this as a "perverse" result because in the end "a *conviction* for 'a statutory violation of drug trafficking ... involving an underage ... individual' in connection with the March 22, 2002 drug sale would result in a one-level increase (§ 2D1.2(a)(2)), but ... this same drug sale, when treated as a ... [§ 3B1.4] adjustment, triggers a two-level increase for uncharged conduct." (emphasis in original).

Perez's argument that the district court should have sentenced him under § 2D1.2 fails on its face. The statutory sections covered by § 2D1.2 include only 21 U.S.C. § 859, 860, and 861, *see* U.S.S.G.App. A, at 478, and the application note to § 2D1.2 states that "this guideline applies only in a case in which the defendant is *convicted* of a statutory violation of drug trafficking in a protected location or involving an underage ... individual ... or in a case in which the defendant *stipulated* to such a statutory violation." *Id.*, comment. (n.1) (emphasis added); *see United States v. Gracia,* 272 F.3d 866, 876 (7th Cir.2001) (citing U.S.S.G.App. C Supp., amend. 591, at 32 (2000)) (" '[I]n order for the enhanced pen-

alties in § 2D1.2 to apply, the defendant must be convicted of an offense referenced to § 2D1.2, rather than simply have engaged in conduct described by that guideline.' "). Any doubt about the range of situations where § 2D1.4 might apply was resolved when the provision was amended in November 2000; it does not apply unless the defendant is convicted of or stipulates to a violation of 21 U.S.C. §§ 859, 860, or 861. *See* U.S.S.G. § 2D1.2, comment. (n.1); *id.* App. C Supp., amend. 591, at 29–31. Thus although Perez is correct that the two provisions create a disparity, he was neither convicted of nor stipulated to a violation of §§ 859, 860, or 861, so § 2D1.2 by its plain language cannot apply to him. *See United States v. Ceballos,* 302 F.3d 679, 697 (7th Cir.2002) (explaining that courts must give effect to plain language of sentencing guidelines).

Moreover, Perez's argument is a nonstarter because even if *one* of his convictions had arisen under §§ 859, 860, or 861 and triggered application of § 2D1.2 for *that* conviction, he still would have been sentenced by reference to § 2D1.1 with a two-level increase under § 3B1.4 for using a minor. This is so because with respect to offenses grouped under U.S.S.G. § 3D1.2(d), as drug offenses are, the district court must apply to every grouped offense "the offense guideline that produces the highest offense level." *See* U.S.S.G. § 3D1.3(b). Only the March 22 transaction involving the 16–year–old conceivably might have been charged under a statute listed in § 2D1.2; the other drug crimes could only have been charged under § 841(a)(1) and thus would have triggered application of § 2D1.1 in any event. The guideline producing the highest offense level, § 2D1.1, yielded a total offense level of 30, and Perez's sentence for each count, including the March 22 crime, would have been based on that number. *See*

U.S.S.G. § 5G1.2(b). Perez's real problem, then, is that he did not confine his criminal conduct to the offense involving the girl. Thus, although he contends that the two-level increase under § 3B1.4 is a "perverse result" because the size of the increase under § 3B1.4 bears no relation to the scope of the minor's involvement–the increase is always two levels, not one *or* two as is true with § 2D1.2–that is the result the sentencing guidelines mandate on these facts even if § 2D1.2 could apply to the offense in which the girl participated.

■ Perez's argument that the district court should have considered the intention of the Sentencing Commission and imposed only a one-level increase *by analogy to* § 2D1.2 is equally unsuccessful. Although making the analogy presumably was not foreclosed by the sentencing guidelines, to obtain it Perez would have had to seek a downward departure from the district court. *See United States v. Bautista,* 258 F.3d 602, 605 (7th Cir.2001) ("A court has authority to depart from the United States Sentencing Commission Guidelines in cases presenting 'mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission.'" (citing *Koon v. United States,* 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996))). Perez did not make such a request. And a district court cannot abuse its discretion by refusing to order a downward departure *sua sponte. See United States v. Sewell,* 159 F.3d 275, 280 (7th Cir.1998). Accordingly, this argument also fails. Perez's argument that he should have received a one-level increase must be made to Congress and not to this court.

AFFIRMED.