UNITED STATES of America, Plaintiff–Appellee,

v.

Lowell J. EKELAND, Defendant–Appellant.

No. 98–3588.

United States Court of Appeals, Seventh Circuit.

Argued March 3, 1999.

Decided April 21, 1999.

Grant C. Johnson (argued), Peggy A. Lautenschlager, Office of United States Attorney, Madison, WI, for Plaintiff–Appellee.

Franklyn M. Gimbel (argued), Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Defendant–Appellant.

Before ESCHBACH, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Pursuant to a plea agreement, Lowell Ekeland pleaded guilty to a single count of mail fraud in violation of 18 U.S.C. § 1341. The district court sentenced Ekeland to 35 months' imprisonment and three years of supervised release, and ordered him to pay restitution to the victim of the offense, Kraft Foods, in the amount of $1,700,000. Ekeland argues that the district court misinterpreted the sentencing guidelines and for that reason failed to grant him a downward departure from the imprisonment range calculated under U.S.S.G. § 2F1.1, the guideline under which he was sentenced. Because the district court did not err in refusing to depart downward, we affirm.

## BACKGROUND

Ekeland worked as a purchasing agent for Oscar Mayer, a Kraft Foods subsidiary, from 1969 until his retirement in 1996. In 1989, he was transferred to the Oscar Mayer facility in Madison, Wisconsin, were he assumed responsibility for

procuring safety supplies for various plants owned by the company. Oscar Mayer prohibited employees or members of their immediate families from directly or indirectly deriving any improper benefit from the employee's position. Each year from 1988 through 1995, Ekeland certified in writing that he was complying with this policy.

In fact, however, Ekeland had been violating the policy already before his move to Madison, and he continued to violate it until his retirement. Ekeland's half-sister, Susan Clouser, and her husband, Michael Clouser, owned two companies, Coon Rapids Farm & Home ("Coon") and Midco, both of which sold hardware goods and domestic products such as disposable gloves and poly bags. In 1984, Ekeland purchased goods for Oscar Mayer from Coon. Beginning in 1987, when the Clousers formed Midco, he also purchased goods from that company. By 1993, when the Clousers sold Coon, more than 90% of Midco sales were to Oscar Mayer's Madison plant; by 1996, the figure was 100%. From at least 1992 to 1996, Ekeland purchased products from the Clousers at vastly inflated prices and was rewarded with one third of the gross profits in the form of check payments from Midco that were written and mailed to his wife. The couple declared these funds as "consulting income" on their tax forms. Through this scheme Ekeland obtained approximately $1,000,000 in illegal kickbacks before he retired.

After Ekeland retired, company officials became suspicious and began investigating his activities. In October 1996, Oscar Mayer auditors met with Ekeland and questioned him regarding his relationship with Midco. When the auditors revealed their knowledge of Ekeland's relationship to the Clousers, he left the meeting. In November 1996, company officials met with Ekeland. This time he admitted that Midco had paid his wife one-third of its gross profits on sales. The officials also met with Michael Clouser, who similarly acknowledged the kickback scheme. In 1998, Kraft Foods sued the Ekelands and Clousers, alleging they conspired to defraud the company of $2,900,000. Based on stipulations, judgment was ultimately entered in favor of Kraft Foods against both couples jointly and severally in the amount of $1,700,000.

Meanwhile enter the government authorities, who, apparently alerted to the Kraft Foods suit by a newspaper article, decided to prosecute Ekeland. In July 1998, Ekeland agreed to plead guilty to mail fraud. The base offense level for violations of § 1341 is six. The presentence investigation report ("PSR") recommended a twelve-level increase under U.S.S.G. § 2F1(b)(1)(M) because the loss fell between $1,500,000 and $2,500,000, a two-level increase for more than minimal planning under U.S.S.G. § 2F1(b)(2)(A), a two-level increase for abuse of a position of trust under U.S.S.G. § 3B1.3, and a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(b). Ekeland moved for a downward departure under U.S.S.G. § 5K2.16, arguing that he had disclosed his conduct before "authorities" discovered it. Alternatively, he requested a downward departure under U.S.S.G. § 5K2.0, contending that his cooperation and payment of restitution were extraordinary enough to take his case outside of the "heartland" of the sentencing guidelines.

The district court refused to depart downward. The court, adopting verbatim language proposed in the government's sentencing recommendation, found that Ekeland "did not disclose [his] involvement in this criminal activity before it was discovered which is the requirement for application of 5K2.16," and that "the combination of factors suggested by [Ekeland do not] take[ ] his case outside of the 'heartland' of cases covered by the guidelines." Applying the PSR recommendations, the court reached a total offense level of 19, a criminal history category of I, and an imprisonment range of 30 to 37 months. The

court sentenced Ekeland near the upper end of that range to hold him accountable "for his serious, long-term criminal conduct, and to serve as an individual and general deterrent."

## ANALYSIS

■ On appeal, Ekeland maintains that the court erred as a matter of law in refusing a downward departure under § 5K2.16. Initially, the government argues that we have no jurisdiction to review Ekeland's appeal because the district court's decision was made "not on legal grounds but rather on [a] factual basis." But in concluding that § 5K2.16 did not apply to the facts of Ekeland's case, the district court relied upon a legal interpretation of § 5K2.16 (and its use of the terms "discovery" and "authorities") that Ekeland argued then and again here to be wrong. This court has jurisdiction to review legal conclusions made in the sentencing process under 18 U.S.C. § 3742(a)(1). Therefore, we do have appellate jurisdiction over this aspect of the case. Our review of questions concerning the "proper interpretation" of § 5K2.16 is "nondeferential." *United States v. Besler,* 86 F.3d 745, 747 (7th Cir.1996); *see also United States v. Aerts,* 121 F.3d 277, 280 (7th Cir.1997).

■ Section 5K2.16 states that "[i]f the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted." U.S.S.G. § 5K2.16, p.s. The section does not apply, however, if the disclosure was motivated by "the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct." *Id.*

Ekeland argues that the term "authorities," as used in § 5K2.16, refers only to agents of the government. And, because only Oscar Mayer officials, and not governmental authorities, knew of his offense (or were likely to discover it), Ekeland argues that he "voluntarily disclosed" his offense before it was discovered by authorities. Whether the term "authorities" can refer to a company's in-house officials would appear to be a novel issue of law. *But cf. United States v. DeMonte,* 25 F.3d 343, 348 (6th Cir.1994) (assuming without analysis that "bank authorities" count as authorities under 5K2.16).

■ We agree with Ekeland that the term "authorities," as used in § 5K2.16, refers only to legal authorities, as plainly stated in the *Webster's* definition: "persons having the legal power to make and enforce the law." *Webster's Encyclopedic Unabridged Dictionary of the English Language,* p. 100 (1994). The meaning of "authorities," however, does not help Ekeland, for the remaining premises of his argument are refuted by the plain language of § 5K2.16. Ekeland did, as he alleges, voluntarily disclose his offense to someone before authorities discovered it. But on the one hand, he did not voluntarily disclose his offense *to authorities,* as § 5K2.16 explicitly requires. Rather, he disclosed it to Oscar Mayer officials, who, as he himself acknowledges, are not "authorities." On the other hand, the statute speaks merely of discovery of the offense, and not of discovery of the offense *by authorities.* Ekeland would have us rewrite § 5K2.16 as follows: "If the defendant voluntarily discloses [ ] the existence of, and accepts responsibility for, the offense prior to the discovery [by authorities] of such offense ..." The section in fact states: "If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense ..." *Cf. United States v. Swanquist,* 161 F.3d 1064, 1077 (7th Cir.1998) (an offense is "discovered" under § 2F1.1 when it is known "by the victim or the proper authorities, whichever comes first") (quoting

*United States v. Lucas,* 99 F.3d 1290, 1296 (6th Cir.1996)). Thus, Ekeland's argument runs directly counter to the language of the statute. We conclude that the district court did not err in concluding that § 5K2.16 does not, as a matter of law, apply to the facts of Ekeland's case.

Ekeland also argues that the district court abused its discretion in refusing to grant him a downward departure under § 5K2.0, and again the government argues that we have no jurisdiction. The district court explicitly concluded that Ekeland's conduct fell within the "heartland" of § 2F1.1, *see Koon* v. *United States,* 518 U.S. 81, 95–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and Ekeland argues that the conduct does not, as a matter of law, fall within that heartland. If the district court's decision not to depart downward necessarily involved legal interpretation of the sentencing guidelines, the decision is subject to appellate review. For example, when a district court erroneously concluded that a prisoner's alien status did not take his case outside the heartland, we remanded for a new sentencing hearing. *United States v. Farouil,* 124 F.3d 838, 842 (7th Cir.1997). *See also Koon,* 518 U.S. at 100 (noting that heartland decisions may involve legal as well as factual elements); *Meza v. United States,* 519 U.S. 990, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996) (directing that a decision not to depart downward be reviewed in light of *Koon*); *United States v. Santoyo,* 146 F.3d 519, 525 (7th Cir.1998) (reviewing decision not to depart downward); *United States v. Schulte,* 144 F.3d 1107, 1110 (7th Cir.1998) (same). We have also stated that "[w]e review a district court's discretionary refusal to grant a downward departure under 18 U.S.C. § 3742(a)(1) when the defendant argues that the district court misconstrued the legal standards governing its authority to depart." *United States v. Carter,* 122 F.3d 469, 471 n. 1 (7th Cir.1997). Such review is deferential, i.e., for abuse of discretion. *Santoyo,* 146 F.3d at 525.

A district court may sentence a defendant outside an applicable guideline range only if "the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)); *see Koon,* 518 U.S. at 94–96. Here, the district court found that it already had sufficiently accounted for Ekeland's cooperation by granting a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, and that nothing about the case took it outside the heartland, i.e., the set of typical cases sufficiently accounted for by an adjustment under § 3E1.1. Ekeland argues that his own cooperation, as a matter of law, reached an extraordinary degree that went beyond mere acceptance of responsibility.

In support of his argument Ekeland cites two cases. First, he cites our statement in *United States v. Carey,* 895 F.2d 318, 323 (7th Cir.1990), that a finding of unusual payment of restitution may warrant a downward departure under § 5K2.0. Second, he cites the Third Circuit's decision in *United States v. Lieberman,* 971 F.2d 989, 996 (3d Cir.1992). That decision upheld a district court's conclusion that the facts of the case fell outside the heartland of § 3E1.1 when a bank employee disclosed the details of an embezzlement scheme as soon as he was confronted by bank officials, resigned his position at the bank, met with bank officials to explain how they could detect similar schemes in the future, paid restitution considerably in excess of what he felt he owed, and went to the FBI to admit his offense. Given all the circumstances, the *Lieberman* court concluded that although "another judge might not have done the same, we cannot say that [the decision to depart downward] was an abuse of discretion." *Id.* Thus, the *Lieberman* court itself indicated that the decision whether or not a set of facts is "unusual" enough to

bring a case outside the heartland of § 3E1.1 is discretionary.

It does not follow, from a decision in one case that a district court did not abuse its discretion in departing downward, that a decision not to depart downward in the same or similar circumstances constitutes an abuse of discretion. Such is the nature of discretion. We conclude that the district court's decision in the present case, involving as it does the delicate weighing of a wide array of facts, does not rise to the level of a legal determination subject to appellate review. The district court adopted the PSR's conclusion that "there is nothing extraordinary about [Ekeland's] payment of restitution in this case; he has simply been required to liquidate some of the many assets he acquired during the 12–year fraud scheme." The district court made no finding that the facts of the case involved any "unusual circumstance ... present to a degree substantially in excess of that which is ordinarily involved," *Carey*, 895 F.2d at 323, and thus determined that the case fell within the heartland of § 3E1.1. Since that determination resulted from the discretionary weighing of facts, and not from legal analysis, Ekeland's characterization of his argument as one to the effect that the district court failed "properly [to] interpret § 5K2.0," and hence his implicit claim that the district court "misconstrued the legal standards governing its authority to depart," *Carter*, 122 F.3d at 471 n. 1, are spurious. What Ekeland in fact seeks is to have us review the district court's discretionary weighing of facts. Therefore, we have no jurisdiction over this aspect of Ekeland's appeal.

## CONCLUSION

The district court did not err in concluding that § 5K2.16 does not, as a matter of law, apply to the facts of Ekeland's case. In addition, we have no jurisdiction to review the district court's determination that Ekeland's case did not present circumstances sufficiently unusual to take the case outside the heartland of the sentencing guidelines. Therefore, we AFFIRM the district court's sentence.