# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 03-4233

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

KAFAYAT ABIMBOLA-AMOO,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 804—**James F. Holderman**, *Judge.*

---

ARGUED OCTOBER 5, 2004—DECIDED NOVEMBER 23, 2004

---

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Kafayat Abimbola-Amoo pleaded guilty to possession of heroin with intent to distribute and was sentenced to 57 months' imprisonment. At sentencing she argued for a downward departure premised on her belief that after completing her sentence she will be deported to Nigeria and imprisoned again for the same conduct. The district judge refused to depart on this basis, and Amoo appeals. We dismiss the appeal.

## I.

Amoo entered the United States in August 2003 from her native Nigeria with 80 pellets of heroin in her stomach.

According to her account, she was a first-time drug courier trying to recover financially after thieves robbed her clothing business in Lagos of its inventory and cash. The day after she arrived in Chicago and expelled the pellets, she was confronted by federal agents who found the 806 grams of heroin during a consent search of her suitcase. Pursuant to a plea agreement, Amoo pleaded guilty to possession with intent to distribute in excess of 100 grams of heroin.

The probation officer assigned to Amoo's case recommended a base offense level of 30, which she reduced to 25 based on Amoo's acceptance of responsibility, U.S.S.G. § 3E1.1, and the application of the safety valve, *id.* §§ 5C1.2, 2D1.1(b)(6). As relevant here, Amoo filed a motion for downward departure based on her assertion that she faces further incarceration for her drug offense when she is deported to Nigeria after serving her prison sentence. Amoo introduced evidence describing Decree 33 of Nigeria's National Drug Law Enforcement Agency, which subjects any Nigerian citizen who is convicted of a narcotics offense abroad and thereby "brings the name of Nigeria into disrepute" to five years' imprisonment and the forfeiture of all assets and property. She also introduced evidence showing that excessive pretrial detention plagues Nigeria's corrections system, and that as recently as 2002 up to 80% of all detainees in the country were awaiting trial, some for as long as 12 years. Amoo offered reports from Amnesty International, the British Home Office, the U.S. State Department, and the Bureau of Citizenship and Immigration Services documenting that Decree 33 is still in effect in Nigeria, especially as a basis for initial detention of drug offenders returning from abroad. The government countered that Decree 33 is rarely enforced—although it offered no

evidence to back up its representation[1]—and argued that Amoo can only speculate that she faces further imprisonment in Nigeria. The district court, reasoning that Amoo had "not sufficiently shown that the factors she has presented fall outside the heartland or that they are factors that the court should consider," declined to depart.

## II.

The government argues that this appeal must be dismissed for lack of jurisdiction. It is well-settled that we have no jurisdiction to review a refusal to depart downward so long as the decision rested on the exercise of discretion, and not a mistaken belief that the sentencing court was without authority to depart. *United States v. Atkinson*, 259 F.3d 648, 652-53 (7th Cir. 2001). We rarely conclude, however, that a district court did not understand its discretion, and presume the opposite to be true. *United States v. Albarran*, 233 F.3d 972, 979 (7th Cir. 2000). Because in this case the government does not dispute Amoo's contention that the district court possessed the authority to depart, we will assume that a showing that an alien defendant faces further punishment in her home country for the conduct underlying the federal conviction could support a discretionary downward departure and

[1] For the first time in its brief in this court, the government draws our attention to what it represents to be an "official notice" from the Nigerian National Drug Law Enforcement Agency declaring that Decree 33 has not been enforced since April 2003. But the government has never produced the document, and government counsel's representation about its content is neither evidence nor supported by any evidence in the record. At oral argument, counsel sought to excuse reliance on the purported notice by observing that it is relegated to a footnote in the government's brief, but the location does not change the fact that the effort plainly flouts Fed. R. App. P. 28(a)(7) and 28(b).

move on to assess whether the court's decision was an exercise of discretion.

Amoo argues that this is one of those rare cases in which the district court erroneously believed that it lacked authority to depart, pointing to the court's own words as her proof. Those words are far from clear, however, as the relevant portions of the sentencing transcript demonstrate:

> Does the defendant have to prove the foreign incarceration by a preponderance of the evidence? The defendant has not here proven it by a preponderance of the evidence.
>
> But the question that is somewhat unique is should a United States court ever take into account a decision by a foreign country to charge and prosecute an individual for a crime in that foreign country even if the prosecution of an individual by that foreign country arises out of conduct that occurred in the United States.
>
> The crime here in Decree 33 of Nigeria is the crime of being found guilty in a foreign country of an offense involving narcotics and thereby bringing the name of Nigeria into disrepute, whether in the United States I would agree that that is a prosecutable offense is not my decision. The laws of Nigeria, unless they violate international law, belong to Nigeria. There is no foreign transfer possibility. All of Ms. Amoo's sentence that I impose today will be served here in the United States. The fact that she is not eligible for early release to a halfway house puts her in the same position as every other deportable alien and that fac- tor alone does not fall outside the heartland. The purpose of the early release is to reorient the incarcerated individual into the United States society. Ms. Amoo will not be in need of reorientation into United States society because she will in all likelihood be deported and if deported, in

likelihood will be prosecuted in the foreign country and perhaps detained for a substantial period of time.

Although the Sentencing Commission has not addressed this point, and as the government pointed out, the closest it came to addressing this point is Section 5H1.10 where among other factors such as race, sex, creed, religion and social economic status the Sentencing Commission determined that national origin should not be a factor.

I believe that the probability of foreign incarceration for a crime committed in another country should belong to the determination of that other country and should not be a factor considered by a United States court in evaluating the appropriate sentence for a violation of United States law.

And so I am going to deny the motion for a downward departure on the bases that I have indicated. The defendant has not sufficiently shown that the factors she has presented fall outside the heartland or that they are factors that the court should consider. I believe if the Sentencing Commission were to address this point, which it has not, that the Sentencing Commission would say foreign incarceration or the probability of foreign incarceration is not a factor that a United States court should consider.

Later the district court encouraged Amoo to appeal its ruling, observing "that this particular issue ought to be addressed, and perhaps we can obtain guidance from either the Court of Appeals or from the Sentencing Commission." As Amoo correctly points out, the district court's explanation for its decision does evidence some doubt on the part of the court about its authority to depart. Nevertheless, several factors convince us that the district court was exercising its discretion not to depart.

As an initial matter, the court used no language that would evidence a belief that it could not depart. The court did not explicitly assert that it lacked authority to depart, as district courts did in many of the cases where we found refusals to depart subject to appellate review. *See United States v. Dote*, 328 F.3d 919, 924-25 (7th Cir. 2003) (reviewing refusal to depart where district court stated that it did not "have the authority to downwardly depart"); *United States v. Hirsch*, 280 F.3d 811, 814 (7th Cir. 2002) (reviewing refusal to depart where district court concluded that it did not "have any authority under the law to downward depart"); *United States v. Schulte*, 144 F.3d 1107, 1109 (7th Cir. 1998) ("[w]e cannot depart downward"). Nor did the court make a conclusion of law, which, unlike a discretionary decision, is reviewable on appeal. *See United States v. Ekeland*, 174 F.3d 902, 905 (7th Cir. 1999); *United States v. Poff*, 926 F.2d 588, 590-91 (7th Cir. 1991) (en banc). Further, the district court did not express a perception that its discretion was cabined by legal constraints. *See United States v. Farouil*, 124 F.3d 838, 845 (7th Cir. 1997) (reviewing refusal to depart where district court lamented not having "greater discretion, particularly in this case"). To the contrary, in sentencing Amoo the court employed language suggesting an exercise of discretion—e.g., by using "I believe" and "should"— rather than something more definitive. *See United States v. Gulley*, 992 F.2d 108, 111 (7th Cir. 1993) (noting that a statement such as, "The guidelines do not permit a downward departure" would clearly indicate that the district judge thought he lacked authority to depart). In the face of the presumption that district courts under- stand their discretion, the absence of any clear pronouncement that the sentencing court thought it was legally unable to depart is a formidable obstacle in Amoo's path.

Moreover, we believe that our recent decision in *United States v. Hernandez*, 330 F.3d 964, 990 (7th Cir. 2003),

controls the outcome of Amoo's appeal. In that case, although we were "somewhat troubled by the district court's musings on the record that she was not entirely sure she could depart," we held that the district court had exercised its discretion in refusing to depart downward. In *Hernandez*, the district court voiced its uncertainty about its authority to depart in much clearer terms than the district court did here, stating explicitly that it did not think there was a legal basis for departing, and that it did not think it could grant a departure. *Id.* at 988. Nevertheless, several features of the district court's discussion convinced us that its refusal to depart was an unreviewable exercise of discretion. First, in declining to depart, the district court worked within the framework of the four categories of sentencing factors—forbidden, encouraged, discouraged, and unmentioned—described in *Koon v. United States*, 518 U.S. 81, 94-96 (1996). *See Hernandez*, 330 F.3d at 988. Second, throughout our analysis, we emphasized the importance of reading the district court's statements of indecision in context, and read as a whole, we concluded that the sentencing transcript evidenced an exercise of discretion. *Id.* at 988-89.

Amoo's appeal is distinguishable from *Hernandez* only insofar as it presents a stronger case for concluding that the district court exercised its discretion. The district court in this case never articulated words of doubt as did the sentencing court in *Hernandez*; Amoo can only infer from several noncommittal passages that the sentencing court thought its hands were tied. Yet inference alone will rarely convince us that a district court misunderstood its discretion. *Atkinson*, 259 F.3d at 653. Further, as in *Hernandez*, the district court evidenced its belief that it had discretion by referring to *Koon*'s categories of sentencing factors: the court noted that Amoo's future punishment was not a prohibited factor like race or national origin. Finally, the isolated statements below that Amoo emphasizes, when

read in context, do not show that the district court misunderstood its discretion.

Amoo singles out two brief comments in the lengthy sentencing transcript that might "reveal some indecision on the part of the judge about [his] authority to depart." *See Hernandez*, 330 F.3d at 988. She infers that by framing the issue as whether a United States court should "ever" consider a successive foreign punishment, the court was necessarily exploring the question as a categorical legal matter. Yet in the very next paragraph, the sentencing judge opined that Nigeria's laws are for Nigeria alone, and that Amoo's prospect of future imprisonment in Nigeria was not the concern of a United States court. Like the district court in *United States v. Wright*, 37 F.3d 358, 361 n.3 (7th Cir. 1994), the sentencing judge made a value-laden judgment that foreign incarceration should be a matter for the foreign jurisdiction. This decision was the essence of discretion, and we may not second-guess it.

Amoo further notes that at the end of the sentencing hearing the district judge volunteered that Amoo should consider appealing the departure decision. Although a sister circuit has noted under similar facts that district judges must know there will be no appellate review of a refusal to depart "unless it was based on lack of authority to depart," *United States v. Taylor*, 286 F.3d 303, 305 (6th Cir. 2002), we are unwilling to take such a narrow view. In *Taylor*, the district court also stated explicitly that it did not believe it had authority to depart, so the reviewing court was not faced with deciding whether an errant comment about appellate review would be enough to compel a conclusion that the court thought it lacked discretion to depart. *Id.* Here, by contrast, Amoo has mere inference, not an explicit assertion, that the district court believed it had no discretion. In this context, the district court's brief allusion to appellate review weighs little in our assessment.

Thus, although the sentencing transcript leaves some room for doubt, we hold that the district court exercised its discretion not to depart downward, a decision that we are without jurisdiction to review.

One final point. At oral argument, we invited the government to forestall appeals like this one by clarifying unclear sentencing decisions before the close of the sentencing hearing, and we renew that invitation now. In this case, simply by asking the district court at sentencing whether its refusal to depart downward was an exercise of discretion or the product of a conclusion that it was legally unable to depart, the United States could have obviated the confusion that formed the basis for appeal. *See United States v. Dowell*, No. 03-2747, 2004 WL 2397335, at \*2 (7th Cir. Oct. 27, 2004). And because the United States prosecutes many criminal cases, it could significantly lighten the burden of this court and other courts of appeal—not to mention its own appellate staff—by taking this simple prophylactic measure in the future.

## III.

Because we lack jurisdiction to consider Amoo's claims, we DISMISS the appeal.

WOOD, *Circuit Judge,* dissenting. Try as I might, I cannot read Judge Holderman's thoughtful observations in this case about his authority to depart downward in response to defendant Kafayat Abimbola-Amoo's motion in the same way as the majority. The majority has reproduced the relevant part of the transcript *ante* at 4-5. What stands out to me are the following statements from the judge:

- [S]hould a United States court *ever* take into account a decision by a foreign country to charge and prosecute an individual for a crime in that foreign country . . . . (Emphasis added.).

- I believe that the probability of foreign incarceration for a crime committed in another country . . . should *not be a factor* considered by a United States court in evaluating the appropriate sentence for a violation of United States law. (Emphasis added.)

- The defendant has not sufficiently shown that the factors she has presented fall outside the heartland *or that they are factors that the court should consider*. (Emphasis added.)

These comments leave no room, in my opinion, for the strained interpretation that the majority gives them— namely, that the district court judge was really saying that he knew that he was free to depart downward based on the possibility of foreign prosecution, but that he was exercising his discretion not to do so. The mere fact that the judge used the verb form "should" a couple of times, and that he prefaced the key middle sentence with the phrase "I believe" does not change the fact that the judge was speaking in absolutes. Phrased differently, the three clauses reproduced above are asking the following questions: should a potential foreign punishment *ever* be a factor? Should it *be* a factor at all? May the court even *consider* it as a factor?

It is no disgrace to any judge to acknowledge that he or she is making a legal ruling on a point on which reasonable jurists might disagree. Judge Holderman signaled that he was doing exactly that, and he could not have been more explicit in his invitation to the parties to take an appeal to this court, under the authority that exists in 18 U.S.C. § 3742. It is well established that this court has jurisdiction to review a district court's decision that the guidelines

absolutely prohibit a departure on a particular ground. *United States v. Ekeland,* 174 F.3d 902, 906 (7th Cir. 1999).

There is every reason to think that the judge's legal conclusion may have affected the ultimate sentence Amoo received. At one point, the judge said, in response to Amoo's plea to the court to take mercy on her, "I will have mercy on you to what I believe to be the fullest extent the law allows." With that comment hanging in the air, he sentenced her to 57 months, which was the low end of the relevant guideline range. The most plausible reading of this exchange is that the judge believed that he could go no lower, which in turn means that he thought that he was legally unable to grant the motion for a downward departure. See *United States v. Buckowich,* 243 F.3d 1081, 1082 (7th Cir. 2001). It is impossible to tell on this record whether Judge Holderman would have granted some kind of departure, had he concluded that he had the authority to do so. I agree with the majority that the government should do more to clarify ambiguous sentencing decisions, *ante* at 9. If we ignore obvious ambiguities, as the majority does here, however, that recommendation does not carry much weight.

The only reason not to vacate the sentence and remand for resentencing would be if this court agreed with the district court's legal conclusion. The majority elides this question, *ante* at 3-4, but I cannot. The starting point, as the majority acknowledges in a slightly different context, is the four-category test set up in *Koon v. United States,* 518 U.S. 81, 94-96 (1996): forbidden factors, encouraged factors, discouraged factors, and unmentioned factors. Only the first are totally beyond the authority of the court to invoke. The analogy the district court here drew to U.S.S.G. § 5H1.10 (the factors of race, sex, national origin, religion, and socio-economic status are "not relevant" in the determination of a sentence) strongly indicates that the court thought that risk of foreign prosecution was similarly forbidden. But the risk of foreign prosecution, even under a law that makes

certain conduct an offense only for nationals of the prosecuting country, has little in common with the list contained in § 5H1.10. The overwhelming majority of Nigerians will never be prosecuted under Decree 33, because they will never be convicted of a narcotics offense in another country and then be returned to Nigeria. There is nothing immutable or inevitable about this risk. Searching for analogies, it is much more like a risk of double prosecution or double punishment for the same offense. In general terms, the Guidelines permit adjustments for this kind of problem. See, *e.g.*, U.S.S.G. § 5G1.3 (undischarged terms of imprisonment for same relevant conduct); *Witte v. United States,* 515 U.S. 389, 405 (1995).

Looked at another way, this appears to be a particularly harsh consequence that only an alien being removed to Nigeria will suffer. This court held in *United States v. Bautista,* 258 F.3d 602, 607 (7th Cir. 2001), that a downward departure is possible in light of the collateral consequences of deportation, but that any such departure should be granted only when those consequences are extraordinary. Following up on the latter idea, we have also held that slight differences in end-of-sentence confinement conditions for aliens do not support the grant of a downward departure. *United States v. Meza-Urtado,* 351 F.3d 301, 305 (7th Cir. 2003). If the type of collateral consequence identified in *Bautista* and *Meza-Urtado* is not a forbidden basis of departure, then I see no reason why the more draconian consequence imposed by Nigerian Decree 33 should be one.

Instead, on the record we now have before us, it appears that Amoo might spend an additional five years in prison and be stripped of her property after she is removed to Nigeria; worse yet, she may fall into the abyss of indefinite pretrial detainment with no assurance of a reasonably prompt ruling one way or the other. This may, depending on the record, qualify as the kind of "fortuitous

increase in the severity of [her] sentence" to which the D.C. Circuit referred in *United States v. Smith,* 27 F.3d 649, 655-56 (D.C. Cir. 1994), or the "extraordinary" collateral consequence this court was thinking of in *Bautista.* The fact that the double jeopardy principle does not prevent two separate sovereigns from prosecuting Amoo does not, as the government seems to think, imply that a departure here must be precluded. The Supreme Court rejected precisely this line of argument in *Koon,* 518 U.S. at 112, in the context of the more common configuration of a state and the federal government as the two relevant sovereigns. There is no reason that foreign governments should be treated differently for this purpose.

I would hold, therefore, that the risk of foreign prosecution is not a forbidden ground of departure. Analogizing to the various sources of law I have discussed, particularly *Bautista*, I would treat it as a discouraged ground. The proper result here would be to vacate the district court's decision and to remand for development of an appropriate record on the basis of which the court could then exercise its discretion. I respectfully dissent from the majority's decision to dismiss this appeal for want of jurisdiction.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*